Herbert LONON, Appellant,

v.

BOARD OF DIRECTORS OF FAIRFAX VILLAGE CONDOMINIUM IV UNIT OWNERS ASSOCIATION, et al., Appellees.

No. 86–728.

District of Columbia Court of Appeals.

Submitted July 1, 1987.
Decided Jan. 29, 1988.

---

Melvin A. Marshall, Washington, D.C., was on the brief, for appellant.

Michael B. McGovern, Washington, D.C., was on the brief, for appellee Bd. of Directors of Fairfax Village Condominium IV Unit Owners Ass'n.

James A. Price, Washington, D.C., was on the brief, for appellees Eddie and Marie Jones.

Before MACK and FERREN, Associate Judges, and REILLY, Senior Judge.

FERREN, Associate Judge:

The trial court granted summary judgment for the defendants in Herbert Lonon's suit claiming title to a unit in the Fairfax Village Condominium complex. We conclude that because there appear to be material facts in dispute which are germane to an issue that appears to be properly before the court, summary judgment was improperly granted. We therefore reverse and remand.

## I.

Because Lonon was somewhat over $2,000 in arrears on his monthly condominium assessments, the condominium association notified him that it would foreclose on his unit and sell it at a public auction unless he paid the arrearages within 31 days. Lonon did not pay, and the unit was put up for sale at auction. Because no one bid, the association itself bought the unit but later sold it to Eddie and Marie Jones for $2,600, subject to an outstanding first deed of trust in the amount of $31,909.87. Lonon sued the board of directors and the Joneses to vindicate his claim of title. The trial court granted summary judgment for the defendants because the court concluded that the association had legally foreclosed on the property. On appeal, Lonon argues that the sale violated the association by-laws and, thereby, the statutory provision authorizing foreclosure sales for failure to pay condominium assessments.[1]

## II.

D.C.Code § 45–1853(c) (1981) provides that unpaid condominium assessments constitute a lien on the unit that "may be enforced against such condominium unit by a power of sale in favor of the unit owners' [condominium] association if assessments are past due, unless the condominium instruments provide otherwise." Lonon claims the condominium instruments do restrict the association's power of sale because Article X.2 of the by-laws states that a lien for unpaid assessments "may be foreclosed in the manner provided by the laws of the District of Columbia *by suit* brought in the name of the Board of Directors...." (Emphasis added.) Lonon argues that only a judicial sale pursuant to a court order entered after proof of a deficiency in valid asessments would satisfy the condominium's own rules.

When Lonon originally brought this suit, he relied on the theory that the board of directors had been improperly elected and therefore had no power to foreclose on his unit. The trial court eventually dismissed this suit with prejudice for failure to prosecute, but the trial court later vacated the dismissal. Lonon first raised the argument that the by-laws require judicial action for foreclosure in a new pretrial statement dated March 10, 1986, which he filed after the dismissal had been vacated. Subsequently, he reiterated the by-laws argument in his opposition to the defendants' motions for summary judgment and in his statement of material facts in dispute.

---

1. Lonon also argues that the sale first to the condominium association and then to the Joneses was illegal because the cash sale price of $2,600 was too far below the value of the unit, which Lonon asserts is about $65,000. Lonon provides no record support for the evaluation he now gives the unit. On the other hand, the condominium association presented uncontradicted evidence that the unit was subject to a deed of trust valued at $31,909.87. Lonon has given us no reason to believe the sale price with the debt still owed on the unit renders the foreclosure suspect.

The record includes only one pleading filed by either of the defendants after the dismissal had been vacated: the Jones' motion for summary judgment filed March 28, 1986. That motion is cursory and does not refer to whether the condominium association by-laws permit a foreclosure sale by the board of directors. On appeal, moreover, the board of directors does not address the by-laws argument in its brief. The Joneses, however, do attempt to answer the by-laws argument in their brief on appeal; they assert that the board of directors had adopted a settled practice of conducting foreclosure sales for non-payment of assessments and that Lonon waived any right to judicial proceedings prior to foreclosure by not objecting to the planned auction during the 31–day grace period given him to pay the assessment before the board would foreclose. The trial court order granting summary judgment does not address the by-laws argument or any other claim Lonon made; it simply states that the association "legally and properly foreclosed" on Lonon's condominium unit.

The argument that the by-laws require some form of court action before a foreclosure sale appears colorable on the record. The expression "by suit brought in the name of the Board of Directors" does not obviously contemplate the self-help method of direct foreclosure sales arranged by the board itself. Moreover, the statute governing condominiums clearly permits foreclosure by judicial sale to satisfy a judgment for unpaid asessments. D.C. Code § 45–1853(a) (1981) states that unpaid assessments constitute a lien on the condominium. While § 45–1853(c) does set out the self-help mechanism allowing the condominium owners association itself to enforce the lien through a foreclosure sale, subsection (g) specifies that "[n]othing in this section shall be construed to prohibit actions at law to recover sums for which ... this section creates a lien, maintainable pursuant to § 45–1819." Section 45–1819 provides that a condominium owners association may bring "an action or suit to recover sums due for damages or injunctive relief, or for any other available reme-

dy" for "[a]ny lack of compliance with this chapter." D.C.Code § 15–102 (1981) states that any final judgment for payment of money rendered by the Superior Court constitutes a lien on any legal or equitable freehold estates of the defendant. Finally, D.C.Code §§ 15–301 *et seq.* (1981) set out the general means for enforcing any decree for the payment of money by a writ of execution authorizing, among other expedients, a public sale of the levied property.

■ The Joneses respond that Lonon waived any right to a judicial proceeding, but we have no record that they argued this response before the trial court or that the court evaluated and accepted it. Moreover, as the Joneses frame their argument, it assumes facts beyond those that were undisputed. The Joneses assert that Lonon's failure to object to the form of the sale constituted a waiver because the board of directors customarily conducted its own sales, but whether such a custom existed and Lonon knew of it are facts never agreed to by the parties. The by-laws argument, therefore, does not appear to have been appropriate for resolution by summary judgment. *Cf. International Brotherhood of Painters and Allied Trades v. Hartford Accident & Indemnity Co.*, 388 A.2d 36, 41–42 (D.C.1978) (summary judgment not appropriate when dispute turns on ambiguous contract provisions). Because the trial court may not even have considered the by-laws argument, and because resolution of it, in any event, will require further factual development, we cannot say that on the merits " 'there is no genuine issue as to any material facts and ... the moving party is entitled to a judgment as a matter of law.' " *Holland v. Hannan*, 456 A.2d 807, 814 (D.C.1983) (quoting Super.Ct.Civ.R. 56(c)).

■ Finally, it is possible that the trial court did not consider Lonon's by-laws argument to be properly before it, since the argument was developed late in the proceedings and did not appear in an amended complaint. The decision to exclude a claim because it was not specifically pleaded in the original complaint, however, would require the court to find that the defendants

were not on notice of the claim against them, that permitting the claim would cause undue delay, or that some other consideration justified forbidding the plaintiff to amend the complaint at trial. *See Scott v. District of Columbia,* 493 A.2d 319, 323 (D.C.1985); *Autocomp Inc. v. Publishing Computer Service, Inc.,* 331 A.2d 338, 340 (D.C.1975). We have no indication in the record that the court intentionally excluded the by-laws argument from its consideration of the summary judgment motion or that such an exclusion would have been justified in the circumstances. We therefore cannot affirm the court's judgment on this basis.

*Reversed and remanded.*

REILLY, Senior Judge, dissenting:

While I grant that the wording of the condominium instrument does raise some doubt as to the authority of the association to enforce its claim for unpaid assessments by foreclosing under a "power of sale," I am not convinced that we are warranted in reversing the order granting summary judgment against appellant. His counsel makes the belated argument that even though the condominium association had a statutory right to exercise a power of sale, D.C. Code § 14–1853(c) (1981), it had excluded itself from utilizing such procedure when it adopted a by-law providing that a lien for unpaid assessments "may be foreclosed in the manner provided by the laws of the District of Columbia *by suit* brought in the name of the Board of Directors." (Emphasis added.)

I question whether the word "suit" is such a word of art that we are compelled to conclude that the association intended to relinquish resort to Section 1853(c), *supra,* as this is the customary method of foreclosure "provided by the laws of the District of Columbia." While this is not a judicial method of foreclosure, it certainly could be characterized as a legal proceeding, for it is recognized by statute [1] providing such safeguards as adequate notice, 30 days notice to the Mayor, a public sale, and compliance with regulations of the City Council intended to convey good title to a bona fide purchaser.

The majority opinion, however, suggests that by the inclusion of this term, the condominium association may have limited itself to actions to recover the amounts due from delinquent members, and to enforce judgments thus obtained to writs of execution against their real property.

But this is not what appellant contends was meant by the condominium by-laws. As his counsel stated in his brief:

In the first, and most important place, D.C.Code § 45–1853 permits enforcement by "power of sale" of the lien created by assessments "unless" the condominium instruments provide otherwise. Here, the condominium's by-laws presented to the trial court, and recited in the adverse parties' motions clearly state that the lien would be enforced by a "suit for foreclosure." Of course, there is a distinction between a "power of sale" and a "suit for foreclosure." A power of sale permits a trustee to sell property. Here, there is no trustee. The suit for foreclosure is defined by D.C.Code § 45–705 (1981). Basically, it is an appeal to the court's equity powers to set the terms of the foreclosure sale. In such a suit, it would seem, all of the normal defenses and judicial procedures would apply. It is also clear on this record, that no such suit ever took place. Accordingly, summary judgment was inappropriate.

Those provisions of the Code, were adopted from acts of Parliament going back to the reign of George II. They prevent a court of equity from proceeding with a suit for the recovery of mortgaged lands, if the defendant pays into court the "principal monies and interest due" and also costs of the litigation. It is scarcely conceivable that the draftsmen of the challenged by-laws had these archaic provisions in mind.

In any event, the record here shows that appellant is estopped at this late date for claiming such relief for the power of sale which was exercised afforded him the same

1. D.C.Code §§ 45–715, –715.1 (1981).

remedy. Under § 45–715.1(b)(c), *supra* note 1, he could have prevented the sale, of which he had notice, from going ahead by tendering the overdue assessment, together with interest and costs to the foreclosing party. *See Cassidy v. Owen,* 533 A.2d 253 (D.C.1987). Instead of exercising his right of redemption at that time, however, he stood aside. He now urges us to hold that the sale was void. Such holding would result in depriving the intervenor—a bona fide purchaser of clear title. On this record, I would affirm the judgment.