Richard I. JOHNSON, Appellant,

v.

FAIRFAX VILLAGE CONDOMINIUM IV UNIT OWNERS ASSOCIATION, Appellee.

No. 87–773.

District of Columbia Court of Appeals.

Argued July 13, 1988.
Decided Sept. 23, 1988.

Bernard A. Gray, Sr., Washington, D.C., for appellant.

Gary M. Hnath, with whom Michael B. McGovern, Washington, D.C., was on the brief, for appellee.

Before TERRY and ROGERS, Associate Judges, and GALLAGHER, Senior Judge.

GALLAGHER, Senior Judge:

This appeal arose after the trial court denied appellant's motion to vacate a prior order which granted summary judgment to appellee. Appellant contends the trial court erred in granting summary judgment to appellee because genuine issues of material fact remained in dispute, and appellee was not entitled to judgment as a matter of law. Because a material issue and certain documents, which are necessary to the disposition of this case, do not appear to have been considered by the trial court, the proceeding was not in a posture for grant of summary judgment. We therefore reverse and remand.

Appellee (the "Association") is a nonprofit association consisting of owners of condominium units in Fairfax Village Condominium IV ("Fairfax Village"), a development located in the southeast section of the District of Columbia. Appellant became an owner of a condominium unit in Fairfax Village in October of 1975. Sometime in 1980, appellant ceased paying his condominium assessments. In 1983, the Association commenced proceedings to foreclose on appellant's unit by selling it at a public auction pursuant to the provisions of a statutory power of sale remedy.[1] At this public sale, appellant's condominium unit was purchased by Esther Wiggins. Appellant's delinquent condominium assessments were paid from the purchase price tendered by Wiggins, who purchased the unit subject to a first mortgage. Appellant commenced a suit challenging the authority of the Association to sell his condominium without prior approval of a court.[2]

Although Wiggins then held title to the condominium, appellant refused to vacate the unit. After several attempts to obtain possession of the unit proved futile,[3] Wiggins eventually ceased paying her assessed condominium fees. Appellant, who continuously remained in possession, did not pay the assessments either. When the monthly condominium assessments became $1,145.08 in arrears on April 5, 1985, the Association, for a second time, commenced a foreclosure proceeding pursuant to the statutory power of sale provision to recover the amount of the delinquent condominium assessments. The Association gave notice of the foreclosure by power of sale

---

1. D.C.Code § 45–1853(c) (1981). Unlike a judicial foreclosure, which involves an adjudication of the parties' rights and obligations before any property may be sold, a power of sale foreclosure involves the direct sale of mortgaged property at a public auction without supervision by a court. In most states, the power of sale must be conferred by clear language in the agreement between the parties. Typically, a mortgage grants the mortgagee the power to sell the mortgagor's property at a public auction upon default of the agreement. The right to execute the power of sale is usually conferred on a trustee (hence the term "trust deed mortgage"), who supervises execution of the public sale pursuant to statutory guidelines. *See, e.g.,* D.C.Code §§ 45–701 to –720 (1981); *id.* § 45–1853(c). For a general discussion and comparison of judicial actions for foreclosure and power of sale foreclosure proceedings, *see* 3 POWELL ON REAL PROPERTY ¶¶ 462–68 (1987).

2. This claim, alleging that the first foreclosure of the unit was wrongful, was severed from an action wherein appellant and other condominium owners challenged the Association's authority to promulgate and enforce parking regulations for the development. On appeal, this court upheld the Association's authority and the regulation. *Johnson v. Hobson,* 505 A.2d 1313 (D.C.1986). Although the severed claim challenging the power of sale foreclosure proceeding was not pursued by either party, it was never dismissed.

3. Apparently, Wiggins instituted several suits for possession in the Landlord & Tenant Branch of the Superior Court of the District of Columbia. For reasons not before this court, those suits by Wiggins were eventually dismissed with prejudice.

both to Wiggins—the record owner of title —and appellant, who the Association felt may have had an equitable possessory interest in the unit in view of his continuous residence there. Neither Wiggins nor appellant satisfied the assessments in arrears, and, consequently, the condominium unit was placed for sale at a public auction.[4] Appellant attended this second foreclosure auction, but the Association eventually purchased the condominium because no other party bid on the unit. Thus, the Association acquired record title to the condominium unit in 1985.[5]

Appellant still refused to vacate the premises, prompting the Association to institute a suit for possession in the Landlord & Tenant Branch of the Superior Court. In response, appellant filed an Answer to the suit for possession which (a) asserted a plea of title,[6] and (b) requested a trial by jury.[7] Consequently, the Landlord & Tenant action was then certified to the Civil Division of the Superior Court, where it was consolidated with the existing claim that challenged the legality of the first foreclosure proceeding completed in 1983.[8]

In this consolidated action, appellant raised several claims.[9] However, at the core of appellant's case is his contention that the bylaws of Fairfax Village IV preclude the Association from foreclosing on liens for unpaid assessments by executing a statutory power of sale. Appellant contends that the condominium bylaws bind the Association to proceed by a judicial foreclosure, which necessitates a formal adversarial proceeding to adjudicate the parties' rights. Under this theory, both foreclosure proceedings instituted by the Association against the condominium unit would be invalid. If both the foreclosure proceedings were improper, appellant argues, *a fortiori*, that (a) he is the proper owner of the condominium unit, and (b) the trial court's determination that the Association held record title to the property was error. The trial court order granting summary judgment does not address the bylaws argument; it simply states "that the foreclosure was executed in accordance with the provisions of D.C.Code § 45–1801, *et seq.* (1981)."

---

4. The statute authorizing condominium associations to foreclose on liens for unpaid assessments by executing a power of sale provides that a unit owner may cure any default prior to foreclosure, adequate notice must be given (thirty days), the sale shall not occur sooner than thirty-one days from the date such notice is mailed, public notice of the sale must be advertised in at least one newspaper of general circulation in the District of Columbia on three separate days during the fifteen-day period prior to the date of sale, and the time and date of the public sale must be stated in the notice. D.C.Code § 45–1853(c). Proper foreclosure by power of sale conveys good title to a bona fide purchaser. *Id.*

5. The statute permits the Association to purchase the unit at the foreclosure sale. D.C.Code § 45–1853(d). At each public auction, the purchaser paid the amount of the unpaid assessments, plus interest and attorneys' fees. The purchaser took the unit subject to a first deed of trust (mortgage) held by Washington Federal Savings & Loan Association. Thus, at this second public sale, the Association purchased the condominium by tendering $1,673.44, subject to the first deed of trust.

6. Super.Ct. L & T R. 5(c) (where defendant interposes plea of title, case is certified to Civil Division).

7. Super.Ct. L & T R. 6.

8. *See supra* note 2.

9. Appellant also asserted that the Board of Directors of Fairfax Village IV was improperly elected, and thus, any act by the Board was *ultra vires.* However, appellant failed to proffer any factual support for this claim in opposition to the motion for summary judgment. Therefore, the trial court "did not err ... in concluding that no issue of material fact was in dispute" regarding the validity of the election. *Johnson v. Hobson, supra,* 505 A.2d at 1317.

In addition, appellant contends, for the first time on appeal, that he was improperly served with a Notice to Quit in the suit for possession. However, appellee, in its verified complaint, stated that proper notice was served on appeal. In opposing appellee's motion for summary judgment, appellant failed to proffer any sworn statements or evidence to rebut appellee's assertion that notice was properly served. In considering a motion for summary judgment, the trial court is bound to consider any sworn statements of the parties, including those made in verified pleadings. *See Thompson v. Seton Investments,* 533 A.2d 1255, 1257 (D.C.1987). In any event, in light of our disposition of this case, we need not decide this issue.

## I.

The District of Columbia Condominium Act [10] permits the Association to assess the cost of common expenses against the owners of condominium units. D.C.Code § 45–1852(c) (1981). The Act also provides that "[a]ll assessments levied against a condominium unit ... shall ... constitute a lien in favor of the unit owners' association...." D.C.Code § 45–1853(a). The lien *"may* be enforced against such condominium unit by a power of sale in favor of the unit owners' association if assessments are past due, *unless the condominium instruments provide otherwise."* D.C. Code § 45–1853(c) (emphasis supplied). Thus, the statute provides owners' associations an alternative means of recouping unpaid assessments, *i.e.,* the lien *may* be enforced "in the same manner as a mortgage foreclosure, but [the statute] does not require it." *Marside, Inc. v. Mosley,* 29 Md.App. 366, 371, 347 A.2d 884, 887 (Md. Ct.Spec.App.1975) (condominium association's foreclosure of lien by statutory power of sale is a permissive remedy). The pivotal issue, then, is whether the condominium instruments of Fairfax Village "provide otherwise," *i.e.,* do the condominium instruments allow the Association to take advantage of the expedited procedure provided by the statute to foreclose on a lien for assessments, or do those condominium instruments "provide otherwise"?

Article X of the bylaws of Fairfax Village provides, in pertinent part:

2. *Lien for Contributions.*

(a) The total annual contribution of each Co-owner for the Common Expenses levied pursuant to these By–Laws is hereby declared to be lien levied against the Unit of such Co-owner within the purview of the Horizontal Property Act, which lien shall be effective as of the first day of each fiscal year of the Condominium. The Board of Directors, or the Manager or Managing Agent, may

file or record such other or further notice of lien, or such other or further document as may be required by the then laws of the District of Columbia to confirm the establishment of such lien.

\* \* \* \* \* \*

(c) The lien for contribution may be foreclosed *in the manner provided by the laws of the District of Columbia by suit* brought in the name of the Board of Directors, acting on behalf of the Council. *During the pendency of such suit* the Co-owner shall be required to pay a reasonable rental for the Unit for any period prior to sale *pursuant to any judgment or order of any court having jurisdiction over such sale....*

(Emphasis supplied.) Appellant contends that the bylaws' reference to foreclosure "by suit" and "pursuant to any judgment or order of any court having jurisdiction over such sale" requires the Association to resort to a judicial proceeding (in contrast to the power of direct sale remedy) to enforce a lien for unpaid assessments. Conversely, the Association relies on a different provision of the bylaws, which empowers the Board of Directors of the Association to enforce "by legal means the provisions of the Declaration [and] these By-laws ... [by] bringing *any proceedings* which may be instituted on behalf of the Co-owners." BYLAWS, Article III.1(i) (emphasis supplied). The Association argues that this language entitles it to take advantage of the expedited statutory remedy of foreclosing on liens for unpaid assessments by executing a power of sale, rather than commencing a proceeding in the Superior Court. *See supra* note 1.

When the bylaws were recorded and appellant purchased his unit in 1975, the only means available to the Association to foreclose on the lien was to commence an action for foreclosure in the Superior Court.[11] The provisions of the Condominium Act at

10. Condominium Act of 1976, 1977 D.C.Stat. 1–89, *codified at* D.C.Code §§ 14–1801 to –1878 (1981). The Act superseded the existing Horizontal Property Act of the District of Columbia, 77 Stat. 449, Pub.L. 88–218 (1963), *previously codified at* D.C.Code §§ 5–901 to –933 (1973).

11. *See* D.C.Code § 5–925(a) (1973) (repealed 1977). *See supra* note 10. The current guidelines governing judicial foreclosure proceedings are contained in D.C.Code §§ 45–701 to –720 (1981).

issue here were not effective until two years later, *i.e.*, March 29, 1977.[12] Since the power of sale provision of the Act is a permissive remedy and the bylaws do not authorize the Association to resort to this remedy, appellant argues, with some merit, that the Association was required to properly amend the bylaws to be able to take advantage of the new statutory remedy.

The condominium instruments, including the bylaws and the sales agreement, are a contract that governs the legal rights between the Association and unit owners. *See Bauer v. Harn*, 223 Va. 31, 36, 286 S.E.2d 192, 194 (1982); *Pepe v. Whispering Sands Condominium Association, Inc.*, 351 So.2d 755, 757 (Fla.Ct.App. 1977). *See also* 1 ROHAN, CONDOMINIUM LAW & PRACTICE § 7.03 (1987). The condominium bylaws "represent a form of private law making, [in which] individual owners come together and agree to subordinate some of their traditional individual ownership rights and privileges when they choose this type of ownership experience." *Ryan v. Baptiste*, 565 S.W.2d 196, 198 (Mo.Ct. App.1978). As such, these documents should be strictly construed as they are written, giving the language its clear, simple, and unambiguous meaning. *See Hibbert v. Hollywood Park, Inc.*, 457 A.2d 339, 342–43 (Del.1983) (applying general rules of contract and statutory construction to interpret corporation's bylaws); *Wescott v. Burton Wood Manor Condominium Association Board of Managers*, 743 S.W.2d 555, 558 (Mo.Ct.App.1988) (strictly construing the governing bylaws); *see also* 8 FLETCHER'S CYCLOPEDIA CORPORATIONS § 4195, at 696 (1982 Rev.) (rules of contract interpretation are generally applicable to the interpretation of bylaws). The condominium declaration, bylaws, sales agreements, and the relevant statutes must be construed as a whole. *See Wolinsky v. Kadison*, 114 Ill.App.3d 527, 532, 70 Ill. Dec. 277, 282, 449 N.E.2d 151, 156 (1983).

Generally, laws in existence at the time a contract is entered into are implicitly incorporated into the agreement. *Maryland–National Capital Park and Plan-*

*ning Commission v. Lynn*, 168 U.S.App.D. C. 407, 411, 514 F.2d 829, 833 (1975) (citing *Wood v. Lovett*, 313 U.S. 362, 61 S.Ct. 983, 85 L.Ed. 1404 (1941)). The condominium declaration and the bylaws "evidence an intent of [the condominium owner and the Association] to be bound by the condominium act *as it existed when the declaration was recorded." Wilderness Country Club Partnership, Ltd. v. Groves*, 458 So.2d 769, 771 (Fla.Ct.App.1984) (emphasis supplied). The subsequent enactment of legislation will not alter the rights and obligations between the parties, absent consent or an express legislative intent to apply the statute retroactively. *See* 1A SUTHERLAND, STATUTORY CONSTRUCTION § 22.24, .36 (1985); 7A FLETCHER'S CYCLOPEDIA CORPORATIONS §§ 3657–58, 3676, 3695, 3733 (1978 Rev.). *See generally* 3 CORBIN ON CONTRACTS § 551 (1960); 4 WILLISTON ON CONTRACTS § 615 (3d ed. 1961). Accordingly, we consider the relevant language of the statute and condominium instruments.

The Condominium Act of 1976 expressly provides that

this [Act] shall not be construed to affect the validity of any provision of any condominium instrument recorded ... and registered prior to March 29, 1977.

D.C.Code § 45–1801(c) (1981). Thus, the Condominium Act clearly exhibits an intent *not* to alter the existing contractual relationship between condominium associations and unit owners. Absent some evidence of acquiescence by appellant, the power of sale mechanism enacted after the condominium documents were recorded and after appellant purchased his unit cannot be interpreted to apply retroactively to alter the contractual right between condominium owners and their owners' associations.

The statutory power of sale provision may be characterized as a "legal proceeding" which the Association could commence *if it were empowered to do so.* However, the provision of the bylaws that specifically addresses recovery of unpaid assessments does not contemplate foreclosure by "any proceeding." Rather, the provision states

**12.** *See* D.C.Code § 45–1801(c) (1981).

that "[t]he lien for contribution may be foreclosed ... by suit...." BYLAWS, Art. X.2(c). The provision also provides that "[d]uring the pendency of *such suit* the Co-owner shall be required to pay a reasonable rental for the unit for any period prior to sale pursuant to any judgment or order of *any court having jurisdiction over such sale.*" *Id.* (emphasis supplied). A clear, simple, and unambiguous interpretation of this language is that the parties envisioned the Association commencing a suit in a *court* of competent jurisdiction to enforce a lien for unpaid condominium assessments. If the Association desired to avoid this sometimes cumbersome process in favor of the expeditious statutory power of sale mechanism, the bylaws could have been properly amended to reflect the parties' consent to such a change in their legal rights.[13]

In *Breene v. Plaza Tower Association,* 310 N.W.2d 730 (N.D.1981), the court held that statutory provisions enacted after a purchaser bought a condominium unit "would not be enforceable against the purchaser except through the purchaser's acquiescence." *Id.* at 734. The court emphasized that the statutory provisions were permissive—like the power of sale provision here—and merely permitted amendments to the bylaws. *Id.* In this case, the power of sale provision is also a permissive means of foreclosure, and it was enacted after the condominium bylaws were drafted.

In *Keystone Service Co. v. 5040–60 North Maine Drive Condominium Association,* 153 Ill.App.3d 220, 106 Ill.Dec. 478, 505 N.E.2d 1269 (1987), the court held that a condominium association could not rely on an amendment to the state Condominium Act to cancel a lease which was in existence prior to the time the Condominium Act was amended. *Id.* at 222, 106 Ill.Dec. at 480, 505 N.E.2d at 1271. Absent a clear legislative intent, the statute would

not be given retroactive effect. *Id.,* at 223, 106 Ill.Dec. at 480, 505 N.E.2d at 1271. Similarly, the power of sale provision in D.C.Code § 45–1853(a) contains no legislative intent to apply it to all condominiums. Rather, the Condominium Act expressly states that it "shall not ... affect the validity" of any provision of a previously recorded condominium instrument. D.C.Code § 45–1801(c). *Cf. Vaughn v. Manor Towers Owners Corp.,* 135 A.D.2d 380, 381, 521 N.Y.S.2d 680, 682 (1987) (legislature clearly intended statute to apply retroactively by express language). Therefore, this provision of the Condominium Act should not be given retroactive effect. *See Wolf v. District of Columbia Rental Housing Accommodations Commission,* 414 A.2d 878, 880 n. 8 (D.C.1980).

█ The bylaws of Fairfax Village were never amended to adopt the expedited remedy of foreclosing on unpaid condominium assessments by a power of sale. *See supra* note 13. The focus, then, is whether the parties expressly consented to the incorporation of D.C.Code § 45–1853(c) into the terms of their agreement "by virtue of the language in the [condominium instruments]." *Angora Enterprises, Inc. v. Cole,* 439 So.2d 832, 834 (Fla.1983). Generally, in the absence of a provision expressly incorporating future amendments to a statute, the parties will not be bound by such changes. *See, e.g.,* 3 CORBIN ON CONTRACTS § 551, at 202 (1963).

In *Angora Enterprises, supra,* the Florida Supreme Court held that a statutory amendment[14] enacted after the condominium instruments were drafted and assented to by purchasers of units was binding on the parties. The court relied on a provision in the declaration of condominium which provided that "the provisions of [the Condominium] Act are hereby incorporated by reference and included herein thereby...."

---

13. At oral argument, counsel for the Association intimated to the court that the Association may have refrained from formally amending the bylaws because such a process is itself cumbersome and expensive. The Association may not reap the benefits of the statute without proceeding by the proper procedures delineated by its own bylaws.

14. The amendment invalidated fee escalation clauses in recreational leases. Fla.Stat. § 718.401(4) (1977).

*Angora Enterprises, supra,* 439 So.2d at 834. This provision, in addition to other related documents, demonstrated "that the parties intended to be bound by future amendments to the condominium act...." *Id.*

In a subsequent case, the Florida Court of Appeals, applying *Angora Enterprises,* held that a lessor of a recreational lease who did not sign the declaration of condominium was not bound by the statutory provision invalidating rent escalation clauses. Since the recreational lease "contain[ed] no language incorporating the Condominium Act, as amended[,]" the "drastic result" of voiding the escalation clauses "should only be accomplished by clearly expressed [contract] terms which expressly adopt the Condominium Act, as amended." *Condominium Association of Plaza Towers North, Inc. v. Plaza Recreational Development Corp.,* 514 So.2d 381, 382 (Fla. Ct.App.1987); *see also Island Manor Apartments of Marco Island, Inc. v. Division of Florida Land Sales, Condominiums and Mobile Homes,* 515 So.2d 1327 (Fla.Ct.App.1987). Thus, the rights and obligations of the parties cannot be altered "[a]bsent consent, or an amendment of the [bylaws] as may be provided for in [the condominium instruments]...." *Pepe v. Whispering Sands Condominium Association, Inc., supra,* 351 So.2d at 757; *see also Fleetwood v. Wieuca, North Condominium Association,* 182 Ga.App. 15, 16, 354 S.E.2d 623, 624 (1987) (where Condo-

minium Act contains the discretionary language "may provide," Association cannot be held liable for failure to act unless such liability is assumed).

■ The Fairfax Village bylaws do not contain any similar type of provision which can be interpreted as incorporating subsequent amendments to the Condominium Act into the contract between the unit owners and the Association.[15] Even though the documents presented to this court for review do not contain any language that seems to evidence the parties' intent to incorporate and be bound by statutory amendments, all of the documents germane to deciding this issue are not before us, *viz.,* (a) the declaration of condominium, and (b) contract of sale entered into by appellant and the condominium association. The absence of these documents precludes meaningful appellate review. *Lonon v. Board of Directors of Fairfax Village Condominium IV Unit Owners Association,* 535 A.2d 1386, 1388 (D.C.1988) (genuine issue of material fact existed as to whether the Association's bylaws required court action before foreclosure sale); *Reynolds v. Georgetown Condominium Association,* 482 A.2d 1248, 1252 (D.C. 1984) (case remanded to determine whether the Association had the "contractual right to foreclose on appellant's property"). "The bylaws argument, therefore, does not appear to have been appropriate for resolution by summary judgment ... because

---

**15.** Although not certified to be included in the record on appeal, we obtained the Declaration of Condominium of Fairfax Village from the trial court record. *See* D.C.App.R. 6(c). Section 11 of the Declaration provides:

*Units Subject to Declaration, By–Laws and Rules and Regulations.* Each Co-owner shall comply with the provisions of this Declaration, the By–Laws, the Rules and Regulations to be adopted by the Board of Directors, and decisions and resolutions of the Board of Directors and of the Council of Co-owners or its representatives, as lawfully amended from time to time, and failure to comply with any such provision, decision, or resolution shall be grounds for an action to recover sums due, for damages or for injunctive relief. All such actions in law or at equity shall be authorized by resolution of the Board of Directors and

the Condominium shall be entitled to recover all reasonable costs and expenses of such actions, including attorney fees.

All present or future Co-owners, tenants, and occupants of Units, or any other person who might use the facilities of the Property in any manner are subject to the provisions of this Declaration, the By–Laws and the Rules and Regulations, and the mere act of occupancy of any said Units shall signify that the provisions of this Declaration, the By–Laws and the Rules and Regulations, are accepted and ratified.

The provision fails to mention the Condominium Act, to say nothing of amendments thereto. Thus, unlike *Angora Enterprises v. Cole, supra,* appellant and the Association did not implicitly consent to be bound by future amendments of the Condominium Act.

resolution of [the bylaws argument] ... will require further factual development." *Lonon, supra,* 535 A.2d at 1388 (citations omitted).[16]

## II.

Turning to a consideration of the record in this case, it does not appear that the trial court addressed the bylaws argument in granting the Association judgment as a matter of law. Even though appellant asserted that the bylaws bound the Association to proceed by a judicial foreclosure, the trial court appears to have assumed that the statute controls because the order granting the Association summary judgment does not address the issue. Given this erroneous assumption, the trial court apparently did not consider it necessary to examine the contract of sale for the condominium unit as well as the entire text of the other relevant condominium instruments in order to ascertain whether appellant consented .to incorporate future amendments of the Condominium Act into his agreement with Fairfax Village. Thus, resolution of this important issue "require[s] further factual development." *Lonon, supra,* 535 A.2d at 1388.

On remand, the trial court must examine *all of the contract documents* that delineate the parties' rights to determine whether the parties intended to be bound by subsequent amendments to the Condominium Act. If the court finds that appellant did not impliedly or expressly consent to be bound by permissive changes in the law, then the Association improperly foreclosed

on appellant's unit, and, *a fortiori,* appellant would have a superior right to title and possession of the condominium unit. On the other hand, should the documents or other evidence reveal appellant's consent, express or implied, to incorporate and be bound by amendments to the Condominium Act, then the Association properly foreclosed upon its valid lien by executing the power of sale provision in the statute.

In any event, however, appellant remains liable for the unpaid assessments levied against his unit. D.C.Code § 45–1852(c). The Association is not precluded from commencing a judicial foreclosure action to recoup the delinquent assessments. *See* D.C. Code § 45–1853(g); *see also Lonon, supra,* 535 A.2d at 1388.[17]

Accordingly, the order of the trial court is reversed, and the case remanded for further proceedings consistent with this opinion. Because of the long and tortuous history of this case in the trial court, it should receive expedited treatment.

REVERSED AND REMANDED.

---

16. Generally, summary judgment is inappropriate when the dispute involves ambiguous contract provisions. *See Amalgamated Transit Union v. Hinton,* 511 A.2d 433, 434–35 (D.C.1986); *Howard University v. Best,* 484 A.2d 958, 966 (D.C.1984); *InterCounty Construction Corp. v. District of Columbia,* 443 A.2d 29, 32 (D.C.1982); *International Brotherhood of Painters & Allied Trades v. Hartford Accident & Indemnity Co.,* 388 A.2d 36, 41–42 (D.C.1978); *1901 Wyoming Avenue Cooperative Association v. Lee,* 345 A.2d 456, 461 & nn. 7–8 (D.C.1975).

17. While § 45–1853(c) establishes the self-help mechanism that allows the condominium owners' association to enforce a lien for assessments

through a direct sale at a public auction, subsection (g) specifies that "[n]othing in this section shall be construed to prohibit actions at law to recover sums for which ... this section creates a lien, maintainable pursuant to § 45–1819." D.C.Code § 45–1853(g). Section 45–1819 provides that a condominium owners' association may commence "an action or suit to recover sums due for damages or injunctive relief, or for any other available remedy" for "[a]ny lack of compliance with [the Condominium Act]." *Id.* § 45–1819. Thus, the Condominium Act clearly permits foreclosure by judicial sale to satisfy a judgment for unpaid assessments.