Diane **GALLISON** et al.

v.

**BRISTOL SCHOOL COMMITTEE.**

**No. 83–39–Appeal.**

Supreme Court of Rhode Island.

June 6, 1985.

Thomas J. Liguori, Jr./Natale L. Urso (Urso Liguori & Urso), Westerly, for plaintiff.

Vincent J. Piccirilli (Palombo & Piccirilli), Providence, for defendant.

## OPINION

BEVILACQUA, Chief Justice.

This is a petition for a writ of common law certiorari by Diane Gallison and Ralph Gizzi (petitioners).[1] They are seeking a review of the decision by the Board of Regents for Elementary and Secondary Education, which held that they were properly suspended as teachers by the Bristol School Committee because of a decline in pupil enrollment.

The facts are not in dispute. The petitioners are certified elementary school teachers who have been employed by the Bristol School System. As a result of a decrease in pupil population, the Bristol School Committee voted to suspend three elementary school teachers including petitioners, effective August 31, 1981.[2]

The petitioners appealed their suspensions to the Commissioner of Elementary and Secondary Education (commissioner) pursuant to G.L.1956 (1981 Reenactment) § 16–39–2. They argued before the commissioner that G.L.1956 (1981 Reenactment) § 16–13–6 requires that suspensions of teachers on the basis of declining enrollment must be made on a systemwide senority basis. In the present case, they contend that the school committee was under an obligation to suspend mathematics teachers in the high school who had less seniority than petitioners. They argue that there were elementary school teachers certified to teach mathematics in the secondary grades who, because they had more seniority should have been transferred to the high school to replace the less senior mathematics teachers. This would then have created vacancies in the elementary school for petitioners. The commissioner disagreed. He found that the school committee was not required to make involuntary transfers of teachers to the high school to provide a position for petitioners in the elementary grades.

Thereafter, petitioners appealed the decision of the commissioner to the Board of Regents for Elementary and Secondary Education (board), which confirmed the findings of the commissioner. The board was of the opinion "that suspensions within the elementary grades because of a decline in students in those grades is proper and that such suspensions need not be made on a systemwide senority system nor require a systemwide bumping of teachers."

As a result of this decision, petitioners filed the present petition in this court, seeking a review of the board's decision. The sole issue before this court is whether § 16–13–6 requires that the suspension of

---

1. We review decisions of the Board of Regents pursuant to G.L.1956 (1981 Reenactment) § 16–39–3 by common-law writ of certiorari. *School Committee of Providence v. Board of Regents for Education,* —— R.I. ——, ——, 429 A.2d 1297, 1301 (1981); *Jacob v. Burke,* 110 R.I. 661, 669–71, 296 A.2d 456, 461 (1972).

2. The Commissioner of Elementary and Secondary Education found that there had been a decline in enrollment of 108 pupils in the elementary grades for the 1981–82 school year and that this pupil reduction was sufficient basis for the school committee to suspend three elementary school teachers. The petitioners concede the need to suspend teachers because of a substantial decrease in pupil enrollment. Their disagreement is with the method used to select the teachers to be suspended.

teachers be made on a systemwide basis pursuant to a systemwide bumping of teachers.

Section 16–13–6 provides:

> "**Suspension because of decrease in school population—Seniority—Reinstatement.**—A school board may, by reason of a substantial decrease of pupil population, within its school system, suspend teachers in such numbers as are necessitated by the decrease in pupil population; provided, however, that such suspension of teachers shall be in the inverse order of their employment unless it is necessary to retain certain teachers of technical subjects whose places cannot be filled by teachers of earlier appointment; and, provided, further, that such teachers as are suspended, shall be reinstated in the inverse order of their suspension. No new appointments shall be made while there are available teachers so suspended."

This statute was enacted to give school committees the power to suspend teachers in the event that a substantial decline in student enrollment occurs. It also provides that the teachers are to be suspended inversely to their order of employment. The statute, however, does not specifically address the question of whether a systematic bumping process is required when a school committee finds that there has been a decline in the enrollment in one segment of the school system.

■ In reviewing the statute to determine if it was properly applied in this case, we are guided by several principles of statutory construction. We note initially that this court is vested with final responsibility

for statutory construction. *Cranston Teachers' Association v. Cranston School Committee,* —— R.I. ——, ——, 424 A.2d 648, 650 (1981); *Statewide Multiple Listing Service, Inc. v. Norberg,* 120 R.I. 937, 940, 392 A.2d 371, 373 (1978). However, where the provisions of a statute are unclear or subject to more than one reasonable interpretation, the construction given by the agency charged with its enforcement is entitled to weight and deference as long as that construction is not clearly erroneous or unauthorized. *Flather v. Norberg,* 119 R.I. 276, 283 n. 3, 377 A.2d 225, 229 n. 3 (1977); 3 Sutherland, *Statutes and Statutory Construction* § 65.03 (4th ed., 1984 Cum Supp.).[3]

■ In this case the Bristol School Committee, faced with a decline in enrollment of 108 *elementary* students, voted to suspend the three least senior *elementary* school teachers. The board decided that such suspensions were appropriate and not in contravention of § 16–13–6. In the absence of more explicit language from the Legislature, we believe that the interpretation of the statute by the board was not clearly erroneous or unauthorized. The decline in the student population occurred within the elementary grades. It is therefore reasonable and within the contemplation of the Legislature that such suspensions should come from within the elementary grades.

Moreover, we believe that the Legislature, in enacting § 16–13–6, was conscious of the importance of maintaining high educational standards for students within the school system.[4] It is clear from the petitioners' argument that the bumping procedure they advocate could result in disrup-

---

3. The Board of Regents has the power "[t]o enforce the provisions of all laws relating to elementary and secondary education[;]" G.L. 1956 (1981 Reenactment) § 16–60–4(9)(g), as amended by P.L.1981, ch. 291, art. 13, § 2 and "[t]o decide and determine appeals from decisions of the commissioner," § 16–60–4(9)(h).

4. We construe this intent from the legislative history of the so-called Teachers' Tenure Act, of which § 16–13–6 is one of the provisions. We note specifically the title of the legislation: "AN ACT TO GUARANTEE AND TO IMPROVE THE EDUCATION OF CHILDREN AND YOUTH IN THIS STATE BY PROVIDING CONTINUING TEACHING SERVICE." P.L.1946, ch. 1775.

tion throughout the school system and thereby adversely affect students' education. We do not believe that the Legislature intended such a result.

For the foregoing reasons, the petition for certiorari is denied and dismissed. The writ heretofore issued, is quashed, and the records and papers certified to this court are ordered returned to the Board of Regents for Elementary and Secondary Education with our decision endorsed therein.