DECISION
Is an auto-body repair shop entitled to storage fees from a third-party insurer after storing one of its own autos (which had been totaled while on loan to one of its customers) in its own storage facility? The plaintiff, Metropolitan Property and Casualty Insurance Company (Metropolitan), appeals[1] a final decision of the defendant, Barry G. Hittner, in his capacity as Director of the Rhode Island Department of Business Regulation (variously the director or the department), urging the court to answer that question in the negative and to vacate the director's decision which not only concluded contrariwise but also levied an administrative penalty against Metropolitan for not paying such fees.[2] Although the court agrees with the director's legal conclusion that auto-body repair shops are so entitled generally, the court does not find reliable, probative, and substantial evidence on the whole record to support the director's discretionary imposition of penalties against Metropolitan for its failure to pay those fees as originally claimed here. Accordingly, and because substantial rights of Metropolitan were prejudiced, the court vacates the $2,386.00 administrative penalty that the director levied against Metropolitan.
 Facts and Procedural History
Providence Auto Body, Inc. (Providence Auto Body) is a licensed auto-body repair shop which, like many other such shops, frequently loans its own vehicles (loaners) to its customers while their auto is being repaired. Unfortunately, along with the convenience that inures to Providence Auto Body's customers comes the unfortunate consequence to Providence Auto Body of lost loaners; that is, autos which are totaled or stolen while on loan. And it is the travails of one of these lost loaners (of which there are 20 or so each year) that paved the way for this proceeding.
Providence Auto Body's license allows it to maintain an auto-body repair facility at 350 Silver Spring Street in Providence, Rhode Island (the repair facility). Given the nature and volume of its business (there are usually 150 to 200 autos in its custody on any given day), Providence Auto Body also leases a separate facility at 476 Silver Spring Street for the storage of totaled autos (the storage facility). The storage facility is itself owned by Providence Auto Body's owner who in turn leases it to Providence Auto Body for $3,500.00 per month. The customary practice of Providence Auto Body is to store totaled autos at the storage facility because of the protection afforded to both its autos and its employees, the latter of whom are actively working at the repair facility and who would otherwise have to contend with the presence of numerous totaled autos lying around.
All of Providence Auto Body's 125 loaners are normally kept at the repair facility and are titled in the name of North American Auto Sales, Inc., a fictitious business name of Providence Auto Body[3] that lists its address as 350 Silver Spring Street on the loaners' certificate of title. Although Providence Auto Body's owner characterized the loaners as being "owned" by North American Auto Sales, Inc., that characterization is sufficiently misleading, even if not entirely inaccurate,[4]
to warrant avoiding its use in this context. Thus, the court will refer to the loaners as having been owned by Providence Auto Body. Having traveled sufficiently down this back road, the Court now turns to the sequence of events that led to this proceeding.
As it is wont to do, on January 4, 1996 Providence Auto Body loaned a Ford Taurus to one of its customers who also happened to be one of Metropolitan's insureds. Calamitously, on January 16, 1996, the customer totaled the Taurus in Connecticut. Thereafter, Coletta's Downtown Service towed the Taurus back to Rhode Island (for which, in addition to an unspecified storage charge, Metropolitan paid) and returned it to the repair facility at the latest on January 17, 1996. Upon its arrival, Providence Auto Body's employees deemed the Taurus to be totaled and removed it to the storage facility pending its appraisal by Metropolitan, which was notified of the loss on January 23, 1996.
The Taurus remained in the storage facility until January 31, 1996 when it was moved back to the repair facility by Providence Auto Body for Metropolitan's appraisal. Providence Auto Body's owner testified that all damage appraisals are carried out at the repair facility rather than the storage facility as a convenience to the appraiser, who may need equipment that is readily available there. Thus, after an appraisal date was set, Providence Auto Body would move the auto that was to be appraised from the storage facility to the repair facility and afterwards return it if the auto was determined to be totaled. Such was the course the Taurus followed on January 31, 1996; that is, Providence Auto Body moved the Taurus from the storage facility to the repair facility, where it was appraised by Metropolitan, and thereafter returned it to the storage facility. Providence Auto Body's shifting of the Taurus was unknown to Metropolitan and, accordingly, Metropolitan's appraisal report reflects only that the appraisal took place at the repair facility address.
The appraisal report also reflects that Metropolitan deemed the Taurus totaled, that it closed its file on the matter on January 31, 1996, and that, in the words of its claims adjuster, "per sup no storage to be paid as veh[icle] owner is also sh[o]p owner, can[']t charge yourself storage." (Respondent's Exhibit A). Shortly after the appraisal, during a February 2, 1996 telephone conversation, Metropolitan and Providence Auto Body agreed that the Taurus was totaled and to settle the matter for $11,900.00. However, consistent with its appraiser's position and as recounted in a confirming letter sent to Providence Auto Body, Metropolitan explained that "due to the duel [sic] ownership of both the vehicle and storage facility" it would not be able to honor Providence Auto Body's request for storage fees. As a result of Metropolitan's February 2, 1996 denial of its liability for storage fees, Providence Auto Body lodged a formal complaint with the department by letter dated that same day. Then, on February 8, 1996, Providence Auto Body allowed Metropolitan to tow the Taurus away from the storage facility (476 Silver Spring Street) by a company of Metropolitan's choice, Auto Placement Center, Inc. Auto Placement Center's job order, however, indicates a pick-up location of 350 Silver Spring Street (the repair facility) rather than the address of actual removal, namely, 476 Silver Spring Street (the storage facility). In reply to a letter from the department inquiring about Providence Auto Body's complaint, Metropolitan once again explained that as far as it knew the Taurus was never stored at the storage facility, but was rather kept where it was regularly garaged; therefore, it would not pay any storage fees.
Ultimately, Metropolitan compensated Providence Auto Body for the totaled Taurus by tendering an $11,900.00 check made out to "North American Auto Sales[,] 350 Silver Spring Street" and dated March 5, 1996. Although Metropolitan paid for the tow and storage of the Taurus from Connecticut, and although it did not deny the dates of storage or the amount of storage fees,[5] it refused to pay Providence Auto Body for its self-storage of the Taurus from January 17, 1996 through February 8, 1996. The storage fee requested by Providence Auto Body was $606.00 ($18.00 per day for the first seven days plus $30.00 per day for the remaining 16 days — in accordance with the highest rate allowed by regulation, see 4 C.R.I.R. 02 040 003-1 to -4 (1994) (the storage fees regulation)). Providence Auto Body's owner testified that during his thirty years in the auto-body repair business an insurance company had never refused to pay for the self-storage of a totaled loaner.
After a pre-hearing conference at which Metropolitan and Providence Auto Body were unable to resolve their dispute, the department held an administrative hearing to consider whether Metropolitan violated chapter 9.1 of title 27 (unfair claims settlement practices act), G.L. 1956 § 27-29-8 (setting procedure director follows to investigate unfair or deceptive acts or practices by insurers that are not otherwise defined), or 4 C.R.I.R. 02 030 073-1 to -10 (1994) (unfair property/casualty claims settlement practices regulation) (the settlement regulation) when it refused to pay storage fees to Providence Auto Body. During the administrative hearing, Metropolitan argued that the Taurus was never stored at the storage facility but was rather kept where it was always kept; that is, at the repair facility. Metropolitan came to this conclusion based upon its review of the paperwork generated after the Taurus was totaled. On paper, and as far as Metropolitan knew, the Taurus was towed to the repair facility, was appraised at the repair facility, and was towed away from the repair facility. Thus, Metropolitan concluded the Taurus was never stored at the storage facility. Although it was "easy for [the hearing officer] to understand how [Metropolitan] received that impression," she nonetheless could not agree with Metropolitan's interpretation of the law and stated that Metropolitan "introduced no evidence . . . that it was not required to pay an owner for the storage of a total loss vehicle when it is kept temporarily in its usual place prior to disposition."
After Providence Auto Body introduced pictures buttressing its assertion that the Taurus was in fact stored at its storage facility, Metropolitan argued that it was not required to pay for the self-storage of the Taurus because "it does not have to pay storage charges to the owner of a total loss vehicle when [that] . . . owner stores the vehicle at its own premises." (Dec. at 10). Metropolitan illustrated this argument with the example of the private owner who parked their totaled auto in their own driveway. Although the hearing officer agreed that "in the ordinary course" of Metropolitan's business it should not be forced to pay storage fees to such an owner, she distinguished this situation because here a commercial enterprise stored its auto on leased property and not in its usual place. Acknowledging that it could "be seen how a misunderstanding may have arisen in the beginning of the appraisal process," (Dec. at 11), the hearing officer nonetheless concluded that Metropolitan's arguments for not paying storage fees had "no merit" and that it violated unspecified sections of the unfair claims settlement practices act as well as G.L. 1956 § 27-29-8 and the settlement regulation.
The hearing officer "rounded off" her decision by addressing two "areas of industry practice" that troubled her. (Dec. at 12-13). The first was Metropolitan's delay (nine days) in appraising the Taurus after Providence Auto Body notified it of the loss. Given the possibility that Metropolitan would declare the Taurus repairable, the consequence of which would have been that storage fees would be prohibited because they are not chargeable to autos awaiting repair, see 4 C.R.I.R. 02 040 003-1, at I (1994) ("[i]f vehicle is repaired by shop, no storage will be charged"), the hearing officer felt the delay was "a considerable length of time to expect a commercial enterprise to have the responsibility of a vehicle without being compensated." (Dec. at 12). The hearing officer was also troubled by Metropolitan's delay (26 days) in tendering a check to Providence Auto Body after it towed the Taurus away, which delay "intentionally or not . . . added to the expense borne by" Providence Auto Body. The hearing officer felt "greater effort to inspect, remove and pay for the total loss" should have been made by Metropolitan. Finally, the hearing officer felt that Metropolitan failed to acknowledge that Providence Auto Body saved it $780.00 in storage fees (26 days at $30.00 per day) by allowing the Taurus to be removed prior to Metropolitan's forwarding the settlement check. The hearing officer suggested that Metropolitan could have paid the charges and filed a complaint or paid all but the disputed amount rather than withhold the entire payment over a relatively small amount. According to the hearing officer, Metropolitan "exhibit[ed] little concern about imposing costs upon another segment of an industry whose costs directly impact upon it." (Dec. at 13).
Consequently, the hearing officer recommended that the director levy a $2,386.00 administrative penalty against Metropolitan, see G.L. 1956 § 42-14-16(a)(2) ("[w]henever the director shall have cause to believe that a violation of title 27 or the regulations promulgated thereunder has occurred by a licensee, the director may . . . [l]evy an administrative penalty" between $100 and $50,000). The director adopted the decision and recommendation of the hearing officer and in response Metropolitan filed a timely appeal to this court.[6]
Metropolitan also applied for and received a stay from the director pending this court's determination of this appeal.
 Standard of Review
This court's review is confined to the record, G.L. 1956 § 42-35-15(f); see also G.L. 1956 § 42-35-9(e) (defining the contents of the record), and in its review the court cannot "substitute its judgment for that of the agency as to the weight of the evidence on questions of fact," G.L. 1956 §42-35-15(g). On questions of law, however, the court is not so limited but can determine anew the law and its applicability to the facts. Furthermore, the court can
 affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 . . .
 (2) In excess of the statutory authority of the agency;
 . . .
 Affected by other error o[f] law;
 Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
G.L. 1956 § 42-35-15(g). Finally, because both the settlement regulation and the storage fees regulation were promulgated pursuant to specific authority granted by the General Assembly, see G.L. 1956 § 27-9.1-8 and G.L. 1956 §§ 5-38-2(c),5-38-5(1), 5-38-27 respectively, they are legislative rules that "have the force of law . . . and are `as binding on a court as a valid statute,'" Dart Industries, Inc. v. Clark, 696 A.2d 306, 314 (R.I. 1997), and are "prima facie evidence of the proper interpretation of the act, if such regulations are not inconsistent with law and are reasonably designed to carry out the intent and purpose of the act," id.; see also Parkway TowersAssociates v. Godfrey, 688 A.2d 1289, 1293 (R.I. 1997) (an "administrative interpretation is entitled to great deference, especially when . . . it is consistent with the overall purposes of the legislation").
 The Agency Decision
At issue is whether Providence Auto Body is entitled to storage fees from a third-party insurer after storing its own Taurus in its own storage facility. Actually, there are really two parts to that question, each of which revolves around a different sense of the word "entitled." The first question is whether Providence Auto Body is entitled to such storage fees as a matter of law (entitled in a general sense). And if the answer to the first question is yes, the second question is whether Providence Auto Body demonstrated its entitlement to such fees here (entitled in a specific sense) at the time it submitted its claim.
In determining whether auto-body repair shops can charge for self-storage as a matter of law, it is helpful to list what Metropolitan does not deny — it does not deny its liability to Providence Auto Body for the Taurus's physical damage, it does not meaningfully deny that the Taurus was stored by Providence Auto Body (it does, however, occasionally place the word stored
in quotes), it does not deny the number of days that Providence Auto Body stored the Taurus, and it does not now deny the storage rate. Moreover, had the Taurus not been totaled, Metropolitan would have had no objection to paying Providence Auto Body for performing the repair work even though Providence Auto Body is in the auto-repair business. Finally, Metropolitan would have paid (and, to the extent incurred by Coletta's Downtown Service, did pay) storage fees if Providence Auto Body had elected to store the Taurus off-site and with another auto-body shop.
It initially appeared on appeal that Metropolitan would further develop the argument it made before the department that storage fees are unavailable as a matter of law to self-storing auto-body repair shops.[7] However, and notwithstanding Metropolitan's assertions in its brief that the issue on appeal is "whether an auto body shop may recover tort damages from a third-party for storing its own vehicle on its own premises after the third-party's negligence has damaged the vehicle" and that "as a matter of law" the answer is no, Metropolitan did not further develop that argument. Rather, Metropolitan developed an argument based on evidentiary insufficiency, that is, according to common law tort principles Providence Auto Body simply failed to prove it was damaged by self-storing its Taurus. Such an argument, however, assumes that auto-body shops are entitled to self-storage fees generally and would be (were the issue not decided on other grounds) more properly considered in the context of the court's later discussion of the propriety of the sanctions levied against Metropolitan (because if Providence Auto Body failed to show that it was entitled to storage fees in this particular case, even if legally entitled generally, then Metropolitan could not be penalized for refusing to pay them). In any event, and notwithstanding Metropolitan's failure to adequately develop the argument, the court must first analyze whether and under what conditions storage fees are recoverable when an auto-body repair shop self-stores one of its own totaled autos because if such fees are unrecoverable as a matter of law then Metropolitan could not have been sanctioned for not paying them.
The department is charged with "carry[ing] out" the Automobile Body Repair Shops act, chapter 38 of title 5, see G.L. 1956 § 42-14-1. In carrying out this duty, and pursuant to specific authority, G.L. 1956 §§ 5-38-2(c), 5-38-5(1),5-38-27, 42-14-17, the director promulgated the Regulation for Storage Rates by Auto Body Shops, 4 C.R.I.R. 02 040 003-1 to -4 (1994) (the previously referred to storage regulation). Although the storage regulation accomplishes many things, it neither grants auto-body repair shops the right to charge storage fees, denies them the right to charge for storing their own autos, nor imposes any duty on insurers to pay such fees. Rather, the storage regulation merely regulates an auto-body repair shop's pre-existing right to charge storage fees. And while the very existence of the storage regulation clearly reflects an auto-body repair shop's right to charge for storing other's autos, and even though it is not wholly inapplicable to this situation, there is something of an administrative silence on the question of whether self-storing auto-body repair shops are entitled to storage fees. That there is such a silence, however, is not indicative of an inability of the director to speak, see G.L. 1956 §5-38-2(a)(1) ("[t]he department of business regulation shall act on all complaints from consumers [and] the insurance industry"); G.L. 1956 § 5-38-5(1) ("[t]he auto collision repair licensing advisory board shall with the director's approval [e]stablish such rules, regulations, and procedures it may deem appropriate"); G.L. 1956 § 5-38-27 ("[t]he director . . . may promulgate rules and regulations to establish reasonable, maximum, storage fees that may be charged by licensees under this chapter"); G.L. 1956 § 42-14-17 ("[t]he director . . . may promulgate such rules and regulations as are necessary and proper to carry out the duties assigned to him or her by this title or any other provision of law"), and Metropolitan does not assert to the contrary.
The storage regulation sets the "maximum rate for vehicle storage charged by auto body shops," 4 C.R.I.R. 02 040 003-1, at I (1994), and is "to be followed, enforced and interpreted with a view to maximize the convenience and minimize the cost to the motorist whose car is under repair," 4 C.R.I.R. 02 040 003-2, at VII (1994). Although clearly not drafted with this precise situation in mind, since both Providence Auto Body and Metropolitan had an interest in what happened to the Taurus after it was damaged, it is not inappropriate to consider how the director's conclusion impacts upon their convenience and cost. It appears that the convenience to the auto-body repair shop is maximized because it can self-store and recover fees rather than store elsewhere, which the court agrees with the department it would likely otherwise do. This in turn saves the insurer the cost of towing the totaled auto to another storage facility. Indeed, were it as Metropolitan would have it (no storage fees allowed for self-storing but allowed for off-site storage) the charade that would ensue to avoid insurers getting, in the department's words, "the benefit of free storage," seems clear enough — since the insurer is on the hook for damages, why would auto-body repair shops self-store for free rather than have their totaled autos towed at insurer expense to one another's storage facilities and collect for storing one another's totaled autos?
Moreover, to whatever extent Metropolitan could be understood as arguing that storage fees are unrecoverable as a matter of law because damages could never be proven by a self-storing auto-body repair shop, the court disagrees. While it is true that Providence Auto Body did not bill itself[8] or show that the space occupied by the Taurus would have been occupied by a "paying" customer, it is also irrelevant. Although a bill is certainly evidence of damage, the lack of a bill does not indicate the lack of damage. Furthermore, assuming the Taurus to have been repairable, Metropolitan would have paid Providence Auto Body to repair it without the necessity of showing that its employees would have been working on other non-Providence Auto Body cars as a condition of payment. Therefore, Providence Auto Body did not have to show that the space occupied by the Taurus would have been otherwise occupied. The two situations are logically indistinguishable — in each services are necessitated for which the insurer is liable by virtue of its insured's conduct. Providence Auto Body was damaged when it provided a service to Metropolitan for which it would have otherwise been paid and for which Metropolitan would have otherwise paid but for the fortuity that it was Providence Auto Body's auto that was stored.
In any event, neither the Automobile Body Repair Shops Act nor the storage regulation prohibits an auto-body repair shop from charging for self-storing its own auto. Moreover, Metropolitan points to no statute or regulation which grants it the right to deny storage fees in this situation as a matter of law. And since the director is charged with oversight of the auto-body repair shop industry, see G.L. 1956 § 42-14-1, his administrative interpretation of the department's administrative silence is "entitled to great deference, especially when, as here, it is consistent with the overall purpose of the legislation," Parkway Towers Associates v. Godfrey,688 A.2d 1289, 1293 (R.I. 1997); see also Pawtucket Power AssociatesLimited Partnership v. City of Pawtucket, 622 A.2d 452, 456-57 (R.I. 1993) ("deference will be accorded to an administrative agency when it interprets a statute whose administration and enforcement have been entrusted to the agency . . . even when the agency's interpretation is not the only permissible interpretation that could be applied"); Gallison v. BristolSchool Committee, 493 A.2d 164, 166 (R.I. 1985) ("where the provisions of a statute are unclear or subject to more than one reasonable interpretation, the construction given by the agency charged with its enforcement is entitled to weight and deference as long as that construction is not clearly erroneous or unauthorized").
The director's conclusion is neither clearly erroneous nor unauthorized and it neither allows nor denies storage fees solely on the basis of one's status as an auto-body repair shop. Rather, to be entitled to storage fees, self-storing auto-body repair shops must demonstrate that they stored their own totaled auto in the normal course of their profession (that is, as if it were being stored for a customer) and they must otherwise act in accordance with the storage regulation, see 4 C.R.I.R. 02 040 003-2, at II (1994) ("The auto body shop shall use the least expensive suitable means of storage."); id., at VI ("Storage fees may be disallowed when the body shop has not made reasonable efforts to promptly contact the . . . insurance carrier of a stored vehicle."). And it is in part to whether Providence Auto Body demonstrated that the Taurus was stored in the normal course to which the Court now turns.
 Did the Director Properly Levy an Administrative Penalty?
"Whenever the director shall have cause to believe that a violation of title 27 or the regulations promulgated thereunder has occurred by a licensee, the director may . . . [l]evy an administrative penalty" between $100 and $50,000. G.L. 1956 §42-14-16(a)(2). There are thus two constituent elements to a finding of a violation by the director: an act and a statute or regulation which that act contravenes. Unfortunately, and unlike the relatively less important penalty amount,[9] neither the director's decision nor the brief submitted on the department's behalf itemizes exactly which sections of statute or regulation Metropolitan allegedly violated and by what acts. Rather the decision broadly concludes that Metropolitan violated "R.I.G.L. Sections 2[7]-9.1, 27-29-8 and Regulation 73." The court is thus left with the task of considering whether there is reliable, probative, and substantial evidence on the whole record to support a finding that Metropolitan's failure to pay the storage fees violated "R.I.G.L. Sections 2[7]-9.1, 27-29-8 and Regulation 73,"[10] each of which will be considered in seriatim.
It is an improper claims practice if an insurer commits certain defined acts "flagrantly and in conscious disregard of . . . chapter [27] or any rules promulgated [t]hereunder
or . . . with such frequency as to indicate a general business practice to engage in that type of conduct," G.L. 1956 §27-9.1-3.[11] Although the record amply supports the director's conclusion that Metropolitan did not pay storage fees to Providence Auto Body, and even assuming that failure is one of the defined acts which if committed flagrantly or frequently would be an unfair claims practice, there is simply nothing in the record to indicate that the denial was either committed flagrantly and in conscious disregard of the law or with such frequency as to indicate a general business practice. Indeed, the hearing officer herself observed that it was "easy" for her to understand how Metropolitan received the impression that the Taurus was never stored at the storage facility, "however erroneous" that conclusion might have been, and that "it can be seen how a misunderstanding may have arisen in the beginning of the appraisal process." (Dec. at 11). Mere error and misunderstanding are hardly the fodder out of which a finding of flagrancy can be made. Furthermore, notwithstanding a reference to "two (2) areas of industry practice" that were never explained or resolved but which the hearing officer felt should be commented upon since "they are capable of repetition in the future," the record is devoid of any evidence indicating that Metropolitan had denied storage fees (for which liability had become reasonably clear) with such frequency as to constitute a general business practice. Perhaps evidence of either could have been had, but it is not found in the record to which the court's review is confined. See also G.L. 1956 § 42-35-9(g) ("[f]indings of fact shall be based exclusively on the evidence and matters officially noticed").
Similarly, there is no evidence indicating that Metropolitan's denial of storage fees violated the settlement regulation, 4 C.R.I.R. 02 030 073-1 to -10 (1994). Indeed, and even assuming that, unlike section 27-9.1-3, a violation of that regulation need not be flagrant or frequent to be penalized, see
G.L. 1956 § 42-14-16(a) ("[w]henever the director shall have cause to believe that a violation of title 27 or the regulations promulgated thereunder has occurred by a licensee, the director may" impose an administrative penalty), the director points to no section (and the court's independent review reveals no section) of the nine-page settlement regulation that Metropolitan's failure to pay storage fees could have violated.[12]
Finally, and even assuming the director meant to cite G.L. 1956 § 27-29-3 ("[n]o person shall engage in this state in any trade practice which is . . . determined pursuant to this chapter to be an unfair method of competition or an unfair or deceptive act or practice in the business of insurance") rather than G.L. 1956 § 27-29-8 (setting procedure director is to follow in investigating unfair or deceptive acts or practices which are not otherwise defined by statute), there is no evidence that could support the conclusion that Metropolitan's failure to pay storage fees here was unfair. Even setting aside Metropolitan's ominous-sounding-yet-wholly-undeveloped concern that the imposition of a monetary penalty for an act first declared unfair "would have constitutional implications," it is certainly not an "unfair" act for Metropolitan to deny paying a claim which as made did not indicate with reasonable clarity that it had liability to Providence Auto Body for the self-storage of the Taurus.
Because the record lacks reliable, probative, and substantial evidence upon which director could exercise his discretion to impose a $2,386.00 administrative penalty against Metropolitan, and because substantial rights of Metropolitan were prejudiced thereby, the penalty is vacated.
 Conclusion
As a matter of law, Providence Auto Body was legally entitled to recover storage fees for self-storing its totaled auto. However, the record as a whole lacks substantial evidence indicating that its claim to Metropolitan was sufficiently clear to indicate that the Taurus was indeed a self-stored auto for which storage fees might be had, rather than a self-stored auto for which no storage fees could be had. Therefore, the director clearly erred in penalizing Metropolitan for not then paying the requested storage fee, and the administrative penalty levied against it is vacated.[13]
Counsel shall submit the appropriate judgment for entry.
[1] See G.L. 1956 § 42-35-15.
[2] To be precise, Metropolitan's complaint did not specifically request that the court vacate the director's decision. Indeed, contrary to the requirements of Super. R. Civ. P. 80(a) ("[t]he complaint shall include . . . a demand for judgment for the relief the plaintiff seeks"), Metropolitan's complaint contains no demand for relief at all. Rather, what demand there is first appears in Metropolitan's brief. While not fatal, the court disapproves of demanding relief in a brief rather than in the complaint as required.
[3] Technically, the Fictitious Business Name Statement filed with the Secretary of State by Providence Auto Body indicates its fictitious business name as North American Auto Sales, without "Inc."
[4] A fictitious business name is merely a name under which an already extant "corporation. . . may transact business in this state," G.L. 1956 § 7-1.1-7.1(a), and a corporation filing a fictitious business name statement does not create a new entity separate and apart from itself, see G.L. 1956 § 7-1.1-7.1(c) ("[t]he fictitious business name statement shall expire upon . . . the dissolution of the applicant corporation"). Thus, the fictitious business name of Providence Auto Body is, to use the vernacular, a distinction without a difference.
[5] At the administrative hearing Metropolitan raised the issue of whether Providence Auto Body stored the Taurus in a manner consistent with the department's mandate that its regulation for storage rates charged by auto-body shops be "followed . . . with a view to . . . minimize the cost to the motorist whose car is under repair," 4 C.R.I.R. 02 040 003-2, at VII (1994); see alsoid. at II ("[t]he auto body shop shall use the least expensive suitable means of storage"). The storage regulation sets the maximum storage rate an auto-body shop can charge for each of three types of storage (listed from most expensive to least): inside, outside-secured, and outside-not-secured. Here, Providence Auto Body claimed it was entitled to storage fees at the highest rate, that is, for inside storage. Concluding that Providence Auto Body "acted in its usual business manner to keep the Vehicle secure while in its custody," the director disagreed with Metropolitan's claim that excessive fees were incurred. Since Metropolitan has not raised this issue here, see Memorandum of Law in Support of Administrative Appeal at 5 ("[t]he dispute has nothing to do with the calculation of the storage fees under the Storage Regulation"), the claim of excessive fees is considered waived and the court takes no position on whether Providence Auto Body followed the regulation in a manner consistent with its stated mandate.
[6] Providence Auto Body is merely a nominal defendant to this appeal because it was served a copy of the complaint solely to satisfy the requirements of Super. R. Civ. P. 80(b) and has not participated in the proceedings before this court. While not raised by the director, the court wishes to comment on the method of service employed by Metropolitan to serve the defendants. Superior Court Rule of Civil Procedure 80(b) provides that "[a] copy of the complaint shall be served . . . in the manner provided by Rule 5." Rule 5(b) provides in turn that "[s]ervice . . . shall be made by delivering [or mailing] a copy" of the complaint to a party or their attorney. Here Metropolitan served its complaint via a constable, by hand delivery, and with a summons, in the manner provided for by Super. R. Civ. P. 4 and as if a civil action, rather than a civil-appellate proceeding,see Blackstone Park Improvement Ass'n v. State of Rhode IslandBoard of Standards and Appeals, 448 A.2d 1233, 1241 n.6 (R.I. 1982) ("an appeal from an administrative action is essentially an appellate proceeding and not a civil action"), was being commenced. Even assuming (1) that such a practice is not specifically prohibited by Rule 80(b), but see Super R. Civ. P. 80(b) ("complaint shall be served . . . upon all . . . parties to the proceeding to be reviewed in the manner provided for by Rule 5"); Super R. Civ. P. 80 Reporter's Notes ("Rule 80(b) . . . does not require service of process by an officer under rule 4"); (2) that serving an administrative-action complaint with a summons satisfies the requirements of Rule 5; and (3) that the underlying purpose of the notice provision of Rule 80(b) would be satisfied, such service is not condoned. In addition to the needless expense incurred, the service of a fully regaled summons, as was done here, adds nothing at best and misleads at worst.
[7] Metropolitan argued categorically before the hearing officer that "it does not have to pay storage charges to the owner of a total loss vehicle when an owner stores the vehicle at its own premises."
[8] However, Providence Auto Body appears to have "billed" North American Auto. The record contains a bill on Providence Auto Body letterhead indicating an insured of North American Auto and reflecting a balance due of $606.00, as if the two were distinct entities.
[9] The penalty was itemized in the department's brief as follows:
$606.00 storage fees for 1/17/96 through 2/8/96 (seven days (@ $18.00 per day plus 16 days (@ $30.00 per day)
$780.00 storage fees saved by prepayment release (2/8/96 to 3/5/96) (26 days @ $30.00 per day)
$1,000.00 penalty for "serious" violations of law
$2,386.00 total administrative penalty
While mooted by the court's vacating of the penalty in its entirety, the court notes that the director included storage charges for February 8, 1996 twice in his calculation of the penalty.
[10] Although the director refers in his decision and in the department's brief to Metropolitan's various delays in handling Providence Auto Body's claim (perhaps indicating some reliance on that delay as a basis for the imposition of administrative penalties), any delay Metropolitan may have engaged in could not support the imposition of penalties here because such acts were not properly noticed, see G.L. 1956 §§ 42-14-16(a),42-35-9(b). Had a penalty been properly imposed against Metropolitan for its delay in tendering payment, however, the record might well have supported that imposition. The settlement regulation requires that "[t]he insurer shall tender payment within thirty (30) days of affirmation of liability, if the amount of the claim is determined and not in dispute," 4 C.R.I.R. 02 030 073-5, at § 7(F) (1994). Here, Metropolitan affirmed its liability to Providence Auto Body in the amount of $11,900.00 on February 2, 1996 at the latest, yet it did not tender payment until March 5, 1996 at the earliest, more than thirty days later.
[11] The acts are defined at G.L. 1956 § 27-9.1-4. Metropolitan suggests on appeal that the only applicable section is § 27-9.1-4(4) ("[n]ot attempting in good faith to effectuate prompt, fair, and equitable settlement of claims submitted in which liability has become reasonabl[y] clear"). Because the court finds neither flagrancy nor frequency, the court need not concern itself with any particular act defined in § 27-9.1-4.
[12] The section of the settlement regulation requiring payment within thirty days of affirmation of liability where the amount of the claim is determined and not in dispute is not violated by Metropolitan's failing to pay storage fees for which liability was disputed. See 4 C.R.I.R. 02 030 073-5, at § 7(F) (1994).
[13] This does not mean, however, that continued denial would not be sanctionable.