DECISION
This matter comes before the Court on the appeal of K. George Joovelegian ("Plaintiff") from a decision of the West Greenwich Zoning Board of Review (the "Zoning Board"), sitting as the board of appeals for the West Greenwich Planning Board (the "Planning Board").[1]
Plaintiff, a neighboring landowner, seeks reversal of the Zoning Board's decision, which upheld the Planning Board's grant of master plan approval for a residential subdivision. The grant of master plan approval was entered in favor of Deer Run Estates, Inc. ("Applicant").[2] Jurisdiction of this Court is pursuant to G.L. 1956 § 45-23-71.
 Facts and Travel
In 2004, the Applicant submitted an application to the Planning Board seeking master plan approval to develop approximately 52.78 acres of land located in West Greenwich, Rhode Island, (the "Town") also designated as Assessor's Lots 13, 15, 16-6 *Page 2 
and 18 (the "Property"). The Property is zoned Rural, Farming, Residential (RFR-2). At the time of the application, the Property consisted of undeveloped, wooded land and the sole means of access was a public road known as Deer Run Drive. Deer Run Drive was a dead-end street that contained a small housing development and ended in a cul-de-sac. In its application, the Applicant proposed extending Deer Run Drive to facilitate the establishment of a twenty-four parcel residential community on the Property to be known as Deer Run Estates (the "Project").[3] Specifically, the Applicant sought to extend Deer Run Drive and in addition, to create two new roadways.[4] Each of these three new roads would end in an internal cul-de-sac. The three roadways would provide access to the twenty-four individual lots, which would be suited for the construction of single-family homes.
On June 7, 2004, the Planning Board met to consider master plan approval of the Project. At the outset of the hearing, the Applicant's attorney commented on the issue of ingress and egress as it related to the Project. The attorney explained that the only means of accessing and exiting the proposed development would be Deer Run Drive. However, he stated that a neighboring property owner, who was present at the meeting, had agreed that his property could be used for emergency ingress and egress. Thereafter, Joe Casali, an engineer speaking on behalf of the Applicant, gave an overview of the Property. Specifically, he addressed issues that related to runoff, water quality and water basins on the site. Prior comments from David Andrews, the Highway Supervisor for the Public Works Department, were also read into the record. *Page 3 
The next person to speak on behalf of the Project was Paul Bannon, a transportation engineer. Mr. Bannon noted to the Planning Board that he was hired to assess the impact of the additional traffic and to address the length of the new cul-de-sacs. In particular, Mr. Bannon was referring to the fact that the extended Deer Run Drive and the two new roadways would not be in compliance with the 1,200 foot maximum cul-de-sac length requirement of the West Greenwich Land Development and Subdivision Regulations (the "Regulations").[5] This particular requirement and the compliance therewith, are at the center of this dispute and as such will be discussed more fully infra. However, for present purposes it is relevant to note that the Regulations state the following:
 "For greater convenience to traffic and more effective police and fire protection, temporary dead end streets shall be limited in length as determined by the Planning Board, not to exceed 1200 feet." See West Greenwich Land Development and Subdivision Regulations, art. XIII, § B(7).[6]
As a result of this requirement, the Applicant was requesting that the Planning Board grant a waiver, which would allow the proposed roadways to exceed the maximum length of 1,200 feet.[7] In light of this concern, Mr. Bannon addressed the waiver on the cul-de-sac length and explained that he had reviewed the sites, access roads and the plans for *Page 4 
development. He also explained that there had been coordination with the police and fire department on the issue of the length of the cul-de-sacs.
Following Mr. Bannon's testimony, Chairman Berry of the Planning Board asked if any conceptual plans had been done that showed the use of a "loop system" on the Project's roadways. The Applicant then presented an alternate layout of the Project that proposed the inclusion of an internal looped road.[8] The Applicant was directed to present that plan to Mr. Andrews, the Highway Supervisor. Thereafter, the meeting was opened up to comments from the public. Several neighbors raised concerns about the Project, including those that related to traffic, emergency access and water usage. The Plaintiff was one of the several neighbors that spoke at the meeting. He explained that he was concerned with the 1,200 foot maximum length requirement for cul-de-sacs and the need for a waiver. Nancy Giorgi, the attorney for the Planning Board, responded that the Planning Board was now considering whether a waiver was necessary in light of the proposed new loop road. Following the neighbors' testimony, a motion was made to continue the hearing to a later date. The motion passed unanimously.
The public hearing for master plan approval of the Project was reconvened on July 12, 2004. At this hearing, the revised plan with the proposed loop road was submitted for the record and referred to as "Master Plan Concept B." There was discussion among those present with respect to the issue of the loop road. Mr. Andrews, the Highway Superintendent, then arrived to offer his comments. He explained that he thought the loop road formation was preferable to the original plan. It was also noted that if the new loop road plan were utilized, the Applicant would not be required to obtain a *Page 5 
waiver on the 1,200 foot maximum length requirement for cul-de-sacs. Thereafter, neighbors again voiced their concerns and comments. The meeting was then closed to the public and at that time the Town Planner, Jennifer Paquet (the "Town Planner"), went over some of her staff's comments with the Board. The Town Planner discussed, among other things, the existence of boulders and stumps on the Property, the need for a landscaping plan, utilities, and a traffic study. There was also comment on the reconfiguration of two lots so that a buffer could be created for one of the abutters to the Property. The Board then determined that it would entertain further comment from the Town Planner and the meeting was again continued.
The matter was revisited by the Planning Board on August 2, 2004. At the outset of the hearing, Chairman Berry outlined the items for discussion as being the loop road, the detention ponds, and the irregularly shaped lots. The first issue discussed was the loop road. One Planning Board member seemed to disfavor the idea while another said he would defer to the Highway Superintendent. The Town Planner produced a written report detailing her thoughts on the loop road. It stated in pertinent part:
 "Concept B shows a looped road which provides better internal circulation for the development, and also eliminates the need for a waiver because the loop road begins at or before the 1,200 foot maximum cul-de-sac length. The same amount of lots are proposed, with minor reconfiguration of the lots around the loop. There is still only one point of emergency access for this subdivision, and an emergency limited access is proposed." See Report from Town Planner to the Planning Board, dated August 2, 2004.
At the hearing, the Town Planner also explained that she had spoken with the police and fire chief and they both preferred a loop road, though they had not seen the final plans. *Page 6 
It was then determined that the Applicant should move forward with the loop road plan. The Planning Board requested a plan that would show the loop road and the reconfiguration of the lots mentioned above. Thereafter, additional discussion ensued, which is not relevant to the instant action. At the close of the meeting, the Applicant submitted a revised plan for the record. It was then noted that the next Planning Board meeting was scheduled to take place on September 13, 2004. The Planning Board indicated that there would be a motion for approval at that time based on the discussed conditions. The Applicant then made a motion to withdraw the waiver request as a result of the new loop road plan. The motion to withdraw the waiver request on the cul-de-sac length was granted.
The final Planning Board meeting on the Project occurred on September 13, 2004. There was some brief discussion on emergency access, boundary markers, and underground utilities. It was determined that these issues would be revisited at the preliminary review stage. After that, a motion to approve the Master Plan for the Project was made. Certain conditions were attached to this approval and read into the record. These included but were not limited to conditions relating to advertising fees, boulder and stump removal, landscaping, utilities, drainage, and emergency access. The motion for master plan approval then passed unanimously.
On October 15, 2004, the Planning Board issued a written decision granting master plan approval for the Project. The decision included the conditions detailed at the final Planning Board meeting and various findings of fact. This included a finding of fact which stated: "the proposed subdivision does not require a waiver on the maximum length of cul-de-sac regulation, Article XIII, Section B. 7., because there is a loop road at *Page 7 
or before the 1,200 foot mark." See Pl. Bd. Decision dated October 15, 2004. Thereafter, Plaintiff timely appealed the Planning Board's decision to the Zoning Board.
The Zoning Board heard Plaintiff's appeal on November 16, 2004. At the outset of the hearing, Plaintiff objected to the Town Solicitor, Michael Ursillo, advising the Zoning Board. Specifically, Plaintiff alleged that this was improper because Mr. Ursillo was a member of the same firm as Ms. Giorgi, who had advised the Planning Board when it heard this matter. After voicing this objection, Plaintiff went on to state that he had two points with respect to the appeal. First, Plaintiff argued that a waiver of the 1,200 foot maximum cul-de-sac length requirement was still necessary despite the addition of the loop road. Secondly, Plaintiff stated that he believed that Deer Run Drive was never intended to provide access to a major development. He claimed that to the best of his recollection, Deer Run Drive was approved for five homes and he could not remember a future road ever being discussed. The Applicant's attorney then objected to Plaintiff's second argument. The attorney stated that the argument that Plaintiff was attempting to make, specifically whether any promises were made before any boards, was not a matter of record and therefore could not be introduced now.
After the initial argument was made by Plaintiff, the hearing was opened to the public. Again neighboring property owners spoke in opposition to the Project. They voiced similar concerns to those raised at the Planning Board. Some of the objectors also added that it was their belief that the original five-home development was never intended to be expanded. Other issues included traffic, safety, and drainage. At the conclusion of the public testimony, the attorney for the Applicant addressed Plaintiff's arguments. The attorney argued that the Planning Board had a right to interpret its own regulations *Page 8 
and that it applied a well-reasoned approach in determining that a waiver was not necessary. The Applicant's attorney also pointed out that if the Regulations are read literally the maximum length requirement for cul-de-sacs only applies to "temporary dead end streets." See West Greenwich Land Development and Subdivision Regulations, art. XIII, § B(7). The Applicant's attorney also claimed that there were never any assurances made to the public that the Property would not be developed.
Following the presentation of the Applicant's attorney, the Town Planner spoke on behalf of the Planning Board's decision. She also answered questions of the Zoning Board relating to emergency access. A board member then asked the town solicitor whether he thought the measurement employed by the Planning Board with respect to the length of the cul-de-sac was correct. The solicitor stated that this issue had already been decided by the Planning Board and it was up to the Zoning Board to decide whether it was clearly erroneous. The debate continued for a short time thereafter until eventually the public portion of the hearing was closed. The Zoning Board then began its deliberations. Thereafter, a motion was made to uphold the Planning Board's decision, which granted master plan approval for the Project. The motion was seconded and unanimously passed. The matter was then continued to January 18, 2005 for a final decision.
On such date, the matter was again heard and the written final decision was entered into the record. The decision indicated that the Zoning Board had determined that the Planning Board's decision was well-supported by the evidence and that it did not commit an error in determining that a waiver was unnecessary. Specifically, the Zoning Board found that: *Page 9 
 "The Planning Board's decision with regard to the loop road making it unnecessary for a waiver for the length of cul-de-sacs was a reasonable interpretation based upon the evidence before it as set forth in the record reviewed by this Board. Nothing in the Town regulations disallows a loop road with intersecting cul-de-sacs." See Z. Bd. Decision dated January 18, 2005.
The decision also indicated that emergency access issues should be reconsidered at the preliminary stage of approval. The Zoning Board then stated that it was denying the appeal and affirming the decision of the Planning Board. On January 31, 2005, Plaintiff filed an appeal with this Court.
 Standard of Review
This Court's review of the decision of a zoning board, sitting as the board of appeals for a planning board, is pursuant to § 45-23-71. Section 45-23-71 states:
 "The court shall not substitute its judgment for that of the planning board as to the weight of the evidence on questions of fact. The court may affirm the decision of the board of appeal or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory, ordinance or planning board regulations provisions;
 (2) In excess of the authority granted to the planning board by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." Sec. 45-23-71(c).
Thus, judicial review of a board's decisions is not de novo. Rather, § 45-23-71 requires that the Superior Court review the board of appeals' decisions utilizing the "`traditional *Page 10 
judicial' review standard that is applied in administrative-agency actions." Munroe v. Town of E. Greenwich, 733 A.2d 703, 705 (R.I. 1999) (quoting Kirby v. Planning Board of Review of Middletown, 634 A.2d 285,290 (R.I. 1993)). As such, "the Superior Court does not consider the credibility of witnesses, weigh the evidence, or make its own findings of fact." Id.
Our Supreme Court has explained that "[i]t is the function of the Superior Court to `examine the entire record to determine whether `substantial' evidence exists to support the board's findings.'"Mill Realty Assocs. v. Crowe, 841 A.2d 668, 672 (R.I. 2004) (quotingDe Stefano v. Zoning Bd. of Review, 122 R.I. 241, 245, 405 A.2d 1167,1170 (1979)). "Substantial evidence . . . means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means [an] amount more than a scintilla but less than a preponderance." Lischio v. Zoning Board of Review of the Town of NorthKingstown, 818 A.2d 685, 690, n. 5 (R.I. 2003) (quoting Caswell v. GeorgeSherman Sand Gravel Co., 424 A.2d 646, 647 (R.I. 1981)). Thus, the "trial justice may not `substitute [his or her] judgment for that of the zoning board if [he or she] can conscientiously find that the board's decision was supported by substantial evidence in the whole record.'"Mill Realty Assocs. v. Crowe, 841 A.2d at 672 (quoting Apostolou v.Genovesi, 120 R.I. 501, 509, 388 A.2d 821, 825 (1978)).
In support of this appeal, Plaintiff advances three chief arguments. First, Plaintiff contends that he did not receive a fair and impartial hearing before the Zoning Board because Mr. Ursillo, the lawyer who advised the Zoning Board, was from the same law firm as Ms. Giorgi, the lawyer that advised the Planning Board. Plaintiff alleges that this created a per se conflict of interest and was illegal. Secondly, Plaintiff asserts that the *Page 11 
Planning Board acted in error when it determined that a waiver was not required as a result of the inclusion of the loop road. Finally, Plaintiff maintains that because Deer Run Drive was originally approved as a five-home development, it should not now be allowed to expand.
The Zoning Board disputes all three of Plaintiff's allegations. First, the Zoning Board maintains that there was no conflict of interest or prejudicial error that resulted from Mr. Ursillo and Ms. Giorgi acting in their respective capacities. The Zoning Board states that the two attorneys are employed by the law firm of Ursillo, Teitz Ritch, which acts as the town solicitor for West Greenwich. The Zoning Board argues that pursuant to the terms of the town's charter, the town solicitor is required to be the legal advisor of all boards. Thus, the Zoning Board contends that it was properly being advised by the town solicitor. In response to Plaintiff's second argument, the Zoning Board avers that the Planning Board's determination that no waiver was required was a reasonable interpretation of the Regulations and should be given great weight by this Court. Finally, the Zoning Board asserts that the Planning Board acted within its authority when it approved the extension of Deer Run Drive.
Similarly, the Applicant disputes all of Plaintiff's contentions. With respect to the issue of a conflict of interest, the Applicant advances a similar argument to that of the Zoning Board. Additionally, the Applicant points to the fact that the town solicitor acts in an advisory capacity rather than in a prosecutorial one, as suggested by Plaintiff. As to the necessity of the waiver, the Applicant argues that the Planning Board has discretion to interpret its own regulations and that its interpretation in this instant was correct. Finally, on the issue of whether the Planning Board had the authority to extend Deer Run Drive, *Page 12 
the Applicant argues that Plaintiff failed to raise this argument at any meeting of the Planning Board. The Applicant therefore contends that it was not proper for the Zoning Board to consider such argument. In addition, the Applicant alleges that a review of the Town's records reveal that Plaintiff's argument is erroneous. Specifically, the Applicant claims that certain documents pertaining to the original five-home development, known as Landmark Estates, reveal that a road was preserved for possible future development.
 Conflict of Interest
Plaintiff, in support of his argument as to a possible conflict of interest, cites to our Supreme Court for the proposition that "[a]n attorney may not simultaneously represent adverse parties." EmpireEquipment v. Sullivan, 565 A.2d 527, 529 (R.I. 1989). This Court agrees that such a mandate does exist and all attorneys are duty bound to follow it. See also R.I. Sup. Ct. Art. V, Rule 1.7. However, the above proposition is inapplicable to the instant matter. The Planning Board and the Zoning Board are not adverse parties and moreover, are not clients of either Mr. Ursillo or Ms. Giorgi. Rather the two attorneys are employed by the law firm of Ursillo, Teitz Ritch, which is the town solicitor for West Greenwich. According to the West Greenwich Town Charter, the "Council in its discretion may retain the services of a law firm to provide the legal services of Town Solicitor." See West Greenwich Town Charter, art. VI, § 604. Moreover, the Town Charter provides that "[t]he Town Solicitor shall be the legal advisor of, and attorney and counsel for, the Town and for all boards, commissions, departments and officers thereof." Id. (emphasis added). Thus, it was not only proper but it was required that the Planning Board and the Zoning Board utilize the law firm of Ursillo, Teitz Ritch as the town solicitor in this matter. *Page 13 
Furthermore, this Court finds that the record is void of any procedural errors at the hearing before the Zoning Board. Specifically, this Court finds no merit in Plaintiff's argument that Mr. Ursillo improperly endorsed certain additional testimony that was introduced before the Zoning Board. Rather, the record reveals that Mr. Ursillo properly advised the Zoning Board that its inquiry was limited in scope to a review of the record of the Planning Board. This is the proper standard pursuant to our General Laws. See § 45-23-70 ("[T]he board of appeal shall not substitute its own judgment for that of the planning board. . . . but must consider the issue upon the findings and record of the planning board.") Furthermore, the record before this Court also indicates that Mr. Ursillo properly advised the Zoning Board of the appropriate standard of review. Id. ("The board of appeal shall not reverse a decision of the planning board. . . . except on a finding of prejudicial procedural error, clear error, or lack of support by the weight of the evidence.")
As such, this Court finds Plaintiff's argument with respect to the issue of a conflict of interest to be unavailing. This Court holds that it was not procedurally unlawful for an attorney from the law firm, which acts as town solicitor, to advise both the Planning Board and the Zoning Board.
 Waiver Requirement
As stated above, Plaintiff contends that the Planning Board and the Zoning Board erroneously interpreted the Regulations with respect to the permissible length for cul-de-sac roads. In Rhode Island, it is a well-settled principle of statutory interpretation "that an administrative agency will be accorded great deference in interpreting a statute whose administration and enforcement have been entrusted to the agency." In re Lallo, *Page 14 768 A.2d 921, 926 (R.I. 2001). As a result, "where the provisions of a statute are unclear or subject to more than one reasonable interpretation, the construction given by the agency charged with its enforcement is entitled to weight and deference as long as that construction is not clearly erroneous or unauthorized." Gallison v.Bristol Sch. Comm., 493 A.2d 164, 166 (R.I. 1985). Further, "the rules governing statutory interpretation are equally applicable to the interpretation of an ordinance." Jones v. Rommell, 521 A.2d 543, 544-545
(R.I. 1987); see also Mongony v. Bevilacqua, 432 A.2d 661 (R.I. 1981).
In the case at bar, the Planning Board and the Zoning Board are charged with the interpretation and enforcement of the Town's ordinances and regulations. In this instant, the Planning Board determined that the 1,200 foot maximum cul-de-sac length requirement became inapplicable once the loop road was added. Specifically, the Planning Board found that the loop road was now the starting point for the measurement of the length of the cul-de-sac pursuant to article XIII, § B(7) of the Regulations. The Zoning Board affirmed this finding. While this Court is mindful that this particular requirement could be subject to different interpretations, this Court is satisfied that the Planning Board's interpretation was neither clearly erroneous nor unauthorized. SeeGallison v. Bristol Sch. Comm., 493 A.2d at 166. As such, this Court defers to the Planning Board's interpretation of the cul-de-sac length requirement of the Regulations. Thus, the Zoning Board did not act in error when it affirmed the Planning Board's holding with respect to the necessity of a waiver.
 Authority to Extend the Original Road
At the Zoning Board hearing and in his memorandum to this Court, Plaintiff alleged that the Planning Board should not be allowed to expand Deer Run Drive because *Page 15 
it was originally approved as a limited development of five homes. Plaintiff, however, failed to raise this issue before the Planning Board and it was not raised by any other individual present. As the Zoning Board is limited in its review to the record before the Planning Board, this argument was not properly before the Zoning Board. See § 45-23-70.
Assuming in arguendo that this issue was properly preserved for this Court; Plaintiff has offered no legal justification to support his argument. Plaintiff simply contends that the Planning Board should not be allowed to extend or change the existing road, which was originally established in 1994. However, pursuant to § 45-23-51, the Planning Board is vested with the authority to control land development projects and subdivisions within the Town. Expressly, a planning board is empowered by its city or town "to adopt, modify and amend regulations and rules governing land development and subdivision projects within that municipality and to control land development and subdivision projects pursuant to those regulations and rules." See § 45-23-51.
Additionally, a review of the Town's records reveals that subsequent development of the Property was always a possibility as a future road was preserved when the original development, Landmark Estates, was established. Moreover, the existence of the future road was discussed at the June 7, 2004 Planning Board meeting, which was attended by Plaintiff. In light of the above, this Court finds that the Planning Board acted well within its discretion when it authorized the expansion of Deer Run Drive.
 Conclusion
Upon review of the entire record, this Court finds that the Zoning Board's decision to deny the appeal and uphold the decision of the Planning Board was not *Page 16 
clearly erroneous. The record indicates that there was sufficient evidence before the Zoning Board to support its decision to affirm the Planning Board. As such, the decision of the Zoning Board is affirmed. Counsel shall submit an appropriate order for entry in accordance with this Decision.
[1] The Zoning Board is vested with jurisdiction to hear an appeal from a decision of the Planning Board pursuant to G.L. 1956 §45-23-57.
[2] Deer Run Estates Inc. was not originally a party to this action; however, it was allowed to intervene as a party-defendant by order of this Court on April 9, 2007. Thereafter, Deer Run Estates, Inc. filed a motion to join G. Johnson Builders, Inc. and DRE Investments, LLC as additional parties in interest. As a basis thereof, the movant alleged that both entities had ownership interests in the plans for the proposed subdivision. The motion to join the additional parties was granted by order of this Court on May 9, 2007.
[3] The final version of the Project, which was approved by the Planning Board, contained only twenty-three parcels. The record indicates that the change was most likely made in order to allow each parcel to contain a more suitable building envelope.
[4] At the time of the application, Deer Run Drive ran approximately 1,100 feet in length from Carrs Pond Road.
[5] Deer Run Drive, as initially proposed, would have been 2,500 feet in length. Doe Place, one of the proposed new roadways, would have been 2,700 feet long. Buck Hollow Drive, the second proposed new roadway, would have had a length of 3,200 feet.
[6] Although the Regulations speak in terms of the 1,200 foot restriction applying to "temporary dead end streets," all persons present at the Planning Board meeting were in agreement that this limitation also applied to permanent dead end streets. Most notably, the Zoning Board and the Planning Board also found the distance restriction to be applicable in the decisions they issued. However, at the Zoning Board meeting, the Applicant's attorney did raise the argument that the regulation should only apply to temporary dead ends. The Applicant has not advanced such argument before this Court.
[7] Pursuant to the Regulations, the Planning Board is authorized to waive or modify requirements relating to subdivision and land development, so long as certain findings are made. See West Greenwich Land Development and Subdivision Regulations, art. VIII, § B.
[8] The proposed loop road connected the two future internal cul-de-sac roads with Deer Run Drive. The loop road intersected with Deer Run Drive in two places creating a continuous route within the proposed development.