DECISION
This case is before the Court on appeal from a decision of the Director of the Department of Health. The appellants, Alpine Nursing Home et. al, are seeking reversal of a final decision by an administrative hearing officer for the Department of Administration which granted a Certificate of Need to Saint Elizabeth Home (Saint Elizabeth) to build a 120 bed replacement facility in Warwick. Jurisdiction is pursuant to R.I.G.L. 1956 § 42-35-15.
 Facts/Travel
Saint Elizabeth Home is a 109 bed nonprofit nursing home located on Melrose Street in Providence. Constructed in 1916 with an addition in 1978, the existing structure operates under several waivers of the State Fire Safety Code and the Federal Life Safety Code. For this reason, as well as others, Saint Elizabeth seeks to construct a 120 bed replacement nursing facility on Cowesett Road in Warwick.
On June 2, 1997, Saint Elizabeth filed an application for a Certificate of Need (CON) to build a 109 bed replacement facility. The Department of Health (DOH) deemed the CON application acceptable and, on July 1, 1997, notified Saint Elizabeth and all "affected persons" that the review would begin.[1] No one requested a public hearing; therefore the matter was referred to the Project Review Committee (PRC). In the meantime, Saint Elizabeth applied for, and was granted, an order allowing it to amend its CON application to 120 beds.[2]
The PRC held its first hearing on August 5, 1997. At the hearing, the appellants claimed the proposed home was not affordable, not needed, and did not meet statutory criteria. On August 19, 1997, the PRC posed 19 questions to Saint Elizabeth, many of which centered on the cost of the proposed project. Saint Elizabeth responded to these interrogatories with written answers on September 19, 1997.
On October 7, 1997, the PRC held its second hearing. Four individuals — including an accountant, a health services planning consultant and an architect — testified in support of Saint Elizabeth's application.
Finally, at the October 14, 1997 hearing, the PRC voted unanimously to recommend approval of the application. In turn, the Health Services Council (HSC) voted 13-1 to adopt the report of the PRC on said application. Patricia Nolan, Director of the Rhode Island Department of Health, accepted the HSC recommendation and granted the CON. The objectors appealed and the administrative hearing officer for the Department of Administration affirmed the Director's decision.
 Standard of Review
The review of a decision of the Commission by this Court is controlled by R.I.G.L § 42-35-15(g), which provides for review of a contested agency decision:
 (g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
This section precludes a reviewing court from substituting its judgment for that of the agency in regard to the credibility of witnesses or the weight of evidence concerning questions of fact. Costa v. Registry of Motor Vehicles, 543 A.2d 1307, 1309 (R.I. 1988); Carmody v. R.I. Conflict of Interest Commission,509 A.2d 453, 458 (R.I. 1986). Therefore, this Court's review is limited to determining whether substantial evidence exists to support the Commission's decision. Newport Shipyard v. RhodeIsland Commission for Human Rights, 484 A.2d 893 (R.I. 1984). "Substantial evidence" is that which a reasonable mind might accept to support a conclusion. Id. at 897. (Quoting Caswell v.George Sherman Sand Gravel Co., 120 R.I. 1981, 424 A.2d 646, 647 (1981)). This is true even in cases where the court, after reviewing the certified record and evidence, might be inclined to view the evidence differently than the agency. Berberian v. Dept.of Employment Security, 414 A.2d 480, 482 (R.I. 1980). This Court will "reverse factual conclusions of administrative agencies only when they are totally devoid of competent evidentiary support in the record." Milardo v. Coastal Resources Management Council,434 A.2d 266, 272 (R.I. 1981). However, questions of law are not binding upon a reviewing court and may be freely reviewed to determine what the law is and its applicability to the facts.Carmody v. R.I. Conflicts of Interests Commission, 509 A.2d at 458. When more than one inference may be drawn from the record evidence, the Superior Court is precluded from substituting its judgment for that of the agency and must affirm the agency's decision unless the agency's findings in support of its decision are completely bereft of any competent evidentiary support. Rochav. State Public Utilities Comm'n, 694 A.2d 722, 726 (R.I. 1997).
 Community Need
The appellants argue that the DOH decision was made upon unlawful procedure and exceeded its statutory authority by failing to consider the need for the replacement facility at thetime and place proposed as required by R.I.G.L. § 23-15-4(b). Under the appellants interpretation of this statute, the place proposed is Kent County and the time proposed is 1999, the year of the opening of the replacement facility. Consequently, the appellants argue, the HSC erred when it considered need on afuture statewide basis. The appellees argue for a more expansive definition of need. The need analysis, appellees contend, encompasses a broad range of factors, including statewide need. Thus, the appellees argue, the HSC acted well within its statutory authority.
In creating the DOH, our legislature found that health planning is fundamental to advance affordable, accessible health services and "is a prerequisite to the effective discharge of the Department of Health's certificate of need responsibilities." R.I.G.L. § 21-1-1.1. The Health Care Certificate of Need Act of Rhode Island, R.I.G.L. § 23-15-1, et seq., is designed to "provide for the development, establishment and enforcement of standards for the authorization and allocation of new institutional health services and new health care equipment." R.I.G.L. § 23-15-3.
Pursuant to the governing statute, an applicant for a CON must show the proposed facility is both needed and affordable. R.I.G.L. § 23-15-4(b) provides,
 No approval shall be made without an adequate demonstration of need therefore by the applicant at the time and place and under the circumstances proposed, nor shall the approval be made without a determination that the proposal for which need has been demonstrated is also affordable by the people of the state. R.I.G.L. § 23-15-4(b) (emphasis added).
The Rules and Regulations also require that "[o]nly proposals for . . . new institutional health services as defined herein which are found to be both needed and affordable shall be granted approval by the state agency." R23-15-CON, section 2.3.
Furthermore, the Rules and Regulations define "public need" as:
 "a substantial or obvious community need for the specific . . . new institutional health service proposed and the scope thereof, in light of the attendant circumstances and in the context of the considerations outlined in sections 4.3(d) and 9.11 herein." R23-15-CON, section 3.20.
Section 4.3(d) states:
 "A formal application shall contain information as a minimum, . . . (d) demonstration of a public need for the proposed new institutional health service . . . and for the scope thereof at the time and place and under the circumstances proposed, considering the availability of existing facilities, equipment and services, both statewide and on a local basis, which may serve as alternatives or substitutes for the whole or any part of the proposed new institutional health service. . ." R23-15-CON, section 4.3.
Section 9.11 directs the HSC reviewing an application to analyze a number of factors, including "any other factors deemed relevant by the [HSC] or the Director." R23-15-CON, section 9.11.
Our Rhode Island Supreme Court is "vested with final responsibility for statutory construction." Gallison v. BristolSchool Committee, 493 A.2d 164, 166 (R.I. 1985). In exercising this duty, the Court will effectuate and establish the intent of the legislature. Lake v. State, 507 A.2d 1349, 1351 (R.I. 1984). Absent a contrary intent, the words in the statute must be given their plain and ordinary meaning. Lake, 507 A.2d at 1351. "However, where the provisions of a statute are unclear or subject to more than one reasonable interpretation, the construction given by the agency charged with its enforcement is entitled to weight and deference as long as the construction is not clearly erroneous or unauthorized." Gallison, 493 A.2d at 166. Moreover, "an agency's construction of its own regulations is entitled to substantial deference." Martin v. OccupationalSafety and Health Review Comm'n, 499 U.S. 144, 150, 111 S.Ct. 1171, 113 L.Ed. 117 (1991).
At issue in the instant matter is the scope of "need" as used in R.I.G.L. § 23-15-4(b) and in the agency's Rules and Regulations. In reviewing Saint Elizabeth's CON application, the HSC clearly considered Kent County's need for the beds as well as Rhode Island's need for the beds. As stated by Max Powell on the PRC, "the regulation is intended to allow us to make a judgment of need on both premises [statewide and local]." John Donahue, on the PRC, addressed the issue: "that planning formula [splitting up the state into small Health Planning Regions] did expire last year. We notified the appropriate parties that we are no longer using that plan formula because that was based on a certain projection of need which has since changed." Transcript at 20-22. Furthermore, abandonment of the "Health Planning Region" formula is documented in the Report of the Committee of the HSC, adopted in full by the Director. In the report, the committee found that the "bed-need formula," which in the past had been used to project nursing home shortages or surpluses for each Health Planning Region, expired in 1996, and no other such formula exists. Report at 3.
On review, this Court finds that the Department's analyzing need on a local and statewide level did not exceed the Department's statutory authority. As the scope of "need" is not delineated in R.I.G.L. § 23-17-4(b), the Court will show deference to the agency's interpretation of the word. SeeAsadoorian v. Warwick School Committee, 691 A.2d 573, 578 (R.I. 1997) (citing Gallison, 493 A.2d at 166). The Rules and Regulations support this interpretation. Section 9.11 allows an approval to be based upon "any other factors deemed relevant by the HSC or the Director." R23-15-CON, section 9.11. Upon the evidence in the record, statewide need for a nonprofit nursing home, beds of which are currently filled with a waiting list, may be relevant to the resolution of a CON application.
Furthermore, section 4.3(d) requires an applicant to demonstrate need considering existing facilities on a statewideand local basis. R23-15-CON, section 4.3(d). This section addresses the concern that "there is duplication and excess supply of certain health services and facilities, particularly in the case of inpatient health services."42 U.S.C. § 300-k-2(b)(1) (repealed). If duplication is relevant to a need analysis and is considered on a local and a statewide basis, then the DOH properly considered need on the same bases. See IFIDAHealth Care v. Dept. of Health, 596 A.2d 1174, 1179 (Pa. Cmwlth. 1991) (the Department presented legally sufficient evidence to support its switch from a "hierarchical group clustering" planning formula to a "by-county" assessment of bed placement).
The appellants also complain that analyzing the future need for beds, and not the present need for beds, exceeded the Council's statutory authority. This argument ignores the true nature of the proposed facility. Saint Elizabeth wishes to construct a replacement facility for its existing structure and existing patient base. The moratorium on new initial nursing facility licensed beds acknowledges the distinction between new and replacement beds and still exempts replacement nursing facilities with the same or lower bed capacity. R.I.G.L. §23-17-44. While technically the project is a "new institutional health service,"[3] to analyze need as if the nursing home did not currently exist with full beds would be to apply the regulations in a vacuum. Thus, it is clearly within the Council's authority to find a present need for the facility where the existing facility has an average patient stay of three and one-half years and a waiting list.
 Need and Affordability
The appellants further argue that the approval was clearly erroneous because the evidence in the record does not support a finding that the proposed home was either needed or affordable. Citing to the report of Timothy Sullivan, the appellants argue that the project would result in higher Medicaid payments to existing Medicaid patients. The Sullivan Report also predicts a declining elderly population in the coming years, a trend which would adversely impact the beds per 1,000 elderly statistic. The appellees contend that the Department's findings are supported by competent evidence in the record.
When "competent evidence exists in the record considered as a whole, the court is required to uphold the agency's conclusions." Barrington School Comm. v. Rhode Island StateLabor Relations Board, 608 A.2d 1126, 1138 (R.I. 1992). A reviewing court will not weigh evidence or assess the credibility of witnesses "but merely reviews the record to determine whether there is legally competent evidence to support the administrative decision." Bunch v. Board of Review. Rhode Island Dept. ofEmployment and Training, 690 A.2d 335, 337 (R.I. 1995). "When more than one inference may be drawn from the record evidence, this court may not substitute its own judgment for that of the agency and must affirm the agency's decision unless the agency's findings in support of its decision are completely without competent evidentiary support." Rocha v. State Public UtilitiesComm'n, 694 A.2d 722, 726 (R.I. 1997) (citing Sartor v. CoastalResources Management Council, 542 A.2d 1077, 1083 (R.I. 1988)).
After weighing conflicting evidence, the committee for the HSC cited to evidence attesting to the need and affordability of the replacement facility. In approving the application, the committee pointed to the substantial documentation of the life/safety code violations of the existing facility. Report at 3. The committee also placed emphasis on the demographic projections for Kent County; the elderly population in Kent County will increase 8.2% by 2010, and in turn the number of beds per 1,000 elderly in the county will decrease to 63.6 by the same year. Report at 6. The HSC further noted the current absence of an Alzheimer's unit in Kent County; a defect the proposed facility will address. Id. The committee then concluded that Saint Elizabeth adequately demonstrated a need for the proposed facility at the time and place and circumstances proposed. Id. at 7.
The committee for the HSC next found that the proposed facility was affordable. Report at 7. The committee had before it evidence that the proposed cost per bed is competitive with those of four other recently approved nursing homes.[4] Furthermore, the HSC emphasized that the cost to Medicaid was limited to $55,000 per bed; a cost comparable to that of existing nursing homes. Report at 13. Thus, the committee concluded that (1) the capital and operating costs of the proposed home are reasonable and necessary, and (2) the impact of the project on the reimbursement system is reasonable. Report at 7-8.
After a review of the entire record, the Court finds that the decision of the Director to grant the CON is supported by reliable, probative and substantial evidence in the record and was not arbitrary or capricious. The Court further finds that substantial rights of the appellants have not been prejudiced, and the actions of the agency did not exceed statutory or constitutional authority. Accordingly, the decision of the administrative hearing officer affirming the Director's decision is affirmed.
Counsel shall submit the appropriate judgment for entry.
[1] Pursuant to the Rules and Regulations § 11.5(a), "the state agency, on 1 July, 1 November, and 10 February shall give written notification to affected persons and/or others requested by the applicants or the state agency of the beginning of the review cycle, such notice to include the following specific facts. . .
 (3) the period within which a public meeting may be held, if requested by an affected person, not to exceed 30 days from the date of notification of affected persons. . . ."
[2] The moratorium on new initial nursing facility licensed beds, R.I.G.L. § 23-17-44(1), exempts existing facilities seeking to construct replacement facilities with the same or lower bed capacity. Section 2 of the statute allows existing facilities to increase their bed capacity by no greater than 10 beds or 10%. The DOH hearing officer read these two sections together to allow Saint Elizabeth to amend its application to reflect an increase in beds to 120.
[3] Section 3.19 states "New institutional health service' means and includes: . . . (b) any expenditure (except acquisitions of an existing health care facility which will not result in a change in the services or bed capacity of such health care facility) by or on behalf of an existing health care facility in excess of $800,000 which is a capital expenditure. . . ."
[4] The figures presented by Saint Elizabeth are as follows: Riverview Nursing Home, $155,667 per bed; Scalabrini Villa, $154,083 per bed; Steere House, $148,375 per bed; Saint Antoine Residence, $136,177 per bed; and Saint Elizabeth Home, $101,866 per bed.